ALICE McCOSKER, Administratrix, etc., Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

McC., plaintiff's intestate, was employed in the yard of defendant at H. P. to assist the yardmaster L.; he was hired by L. and was under his control and supervision. While McC. was engaged, by the direction of L., in attaching a damaged car standing on a track in the yard to another car, L. negligently signaled to an engineer, whose train stood upon the track, to back the train, which he did, without signal or warning, and in consequence McC. was crushed between the cars, receiving injuries causing his death. In an action to recover damages, *held*, that the yardmaster was to be deemed a fellow-servant with the deceased as to all acts done in the range of the common employment, except those done in the performance of some duty which defendant owed to its servants; that the act in question was not one of that character; and that, therefore, defendant was not liable.

*McCosker* v. *L. I. R. R. Co.* (21 Hun, 500), reversed.

(Argued January 25, 1881; decided February 8, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made July 1, 1880, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 21 Hun, 500.)

This action was brought to recover damages for alleged negligence causing the death of John McCosker, plaintiff's intestate.

These facts were stipulated on the trial—

"*First.* That John McCosker, plaintiff's intestate, was, at the time of his death, in the employ of the defendant as a driller in and about the defendant's yard at Hunter's Point. That the duties of said McCosker as such driller were to assist in the making up of trains, and the distribution of cars in and about the said yard and repair shops of the defendant.

"*Second.* That said McCosker had been hired by and was under the immediate supervision and control of Rodney W. Luke, the yardmaster.

"*Third.* That the duties of said Luke included the hiring and discharging of drillers, the making up of trains and the distribution of cars in and about the said yard and the repair shops of the defendant, and that said McCosker and others were employed by the defendant to assist said Luke in said duties. That the immediate superior of said Luke in the service of the defendant was the train dispatcher, whose orders and instructions said Luke was at all times bound to obey, and who was under the control of the general superintendent of the defendant.

"*Fourth.* That on or immediately prior to the 25th day of May, 1877, a certain caboose car was brought into the yard from some point on defendant's railroad, having the bumper upon its easterly end so broken that it could not be coupled to another car by the ordinary method. That said Luke having on the day aforesaid received instructions from defendant's repair shop to send said car to said shop (which was situate in defendant's yard at Hunter's Point), for repairs to said bumper, instructed McCosker and another driller to assist him, the said Luke, therein; that said car was then standing at or near the westerly end of one of the tracks in said yard; within a few feet to the easterly and upon the same track stood four cars coupled together, but detached from the car with the broken bumper; these were flat cars about four feet high above the rail; and still farther to the easterly, upon the same track, stood a train of ten flat cars, each of the height aforesaid, and having an engine attached thereto at the easterly end, facing easterly. That said Luke instructed said McCosker and another

driller to take a chain and attach the same to the said broken bumper, and also to the car standing next easterly thereof; in order that said broken car might be hauled to the repair shop. That while the said McCosker and the other driller were so engaged the said Luke, who was standing near the engine, signaled the engineer to back his train. That the said engineer thereupon, without signal or warning, backed the said engine and train in a westerly direction in such manner that the rear car of said train struck against the four detached cars, and forced the car next easterly of the car with the broken bumper backward upon and against said McCosker, so that he was crushed between said two cars last mentioned and sustained injuries, from which he subsequently died on the 5th day of June, 1877. That the said injuries were sustained at about half past eleven o'clock in the morning of the 25th day of May, 1877.

"*Fifth.* That said Luke knew of the broken bumper before he gave the order to deceased; that the said defect was patent and noticeable to any one familiar with railroad cars."

The defendant moved that the complaint be dismissed, on the following grounds:

"*First.* That the acts of the yardmaster Luke, so far as they tended to cause the injury, were those of a fellow-servant with the deceased, for which defendant is not liable.

"*Second.* That there is no evidence of any failure to perform the duties which defendant owed to said deceased, either on its part or on the part of any person to whom it had delegated the performance of such duties.

"*Third.* That plaintiff has failed to establish a cause of action against the defendant."

The court denied the motion, and the defendant duly excepted.

*Edward E. Sprague* for appellant. The test of the master's liability is the character of the act, in the performance of which the injury arises. (*Crispin* v. *Babbitt,* Ct. App., Sept. 21, 1880; *Rose* v. *B. & A.,* 58 N. Y. 217, 220; *Farwell* v. *B.*

& *W. R. R.*, 4 Metc. 49; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Eagan* v. *Tucker*, 18 Hun, 347.) Defendant was bound to use due diligence in providing proper and sufficient tools, machinery and apparatus for the use of servants and in employing fellow-servants, competent and sufficient in number, and in discharging such as he knows, or ought to know, to be incompetent. (*Wright* v. *N. Y. C.*, 25 N. Y. 562, 565; *Flike* v. *B. & A.*, 53 id. 549, 553; *Keegan* v. *Western R. R.*, 8 id. 175; *Ryan* v. *Fowler*, 24 id. 410; *Plank* v. *N. Y. C.*, 60 id. 607; *Mehan* v. *S. B. & N. Y.*, id. 615; *Manning* v. *Hogan*, 78 id. 615; *Kirkpatrick* v. *N. Y. C.*, 79 id. 240; *Gage* v. *D. L. & W.*, 14 Hun, 446; *Cone* v. *D. L. & W.*, 15 id. 172; *Hawley* v. *North. Cent.*, 17 id. 115; *Connolly* v. *Poillon*, 41 Barb. 366; *Spelman* v. *Fisher Iron Co.*, 56 id. 151; *Laning* v. *N. Y. C.*, 49 N. Y. 521; *Brickner* v. *N. Y. C.*, 2 Lans. 586; *Sprong* v. *B. & A.*, 58 N. Y. 56; *Booth* v. *B. & A.*, 73 id. 38; *Harney* v. *N. Y. C.*, 19 Hun, 556; *Heiner* v. *Heuvelman*, 45 N. Y. Supr. 88.) Errors in starting trains are not imputable to the corporation as master. (*Rose* v. *B. & A.*, 58 N. Y. 217, 221; *Wright* v. *N. Y. C.*, 25 id. 562; *Haskin* v. *N. Y. C.*, 65 Barb. 129, 134; 56 N. Y. 608.) The yardmaster's act in signaling the engineer had no relation whatever to his authority to hire and discharge. (*Crispin* v. *Babbitt*, *supra; Barringer* v. *D. & H. C. Co.*, 19 Hun, 216.) The yardmaster and plaintiff's intestate were co-employees. (*Laning* v. *N. Y. C.*, 49 N. Y. 528; *Feltham* v. *England*, L. R., 2 Q. B. 33; *Wilson* v. *Merry*, L. R., 1 Scotch App. 326; *Barringer* v. *D. & H.*, 19 Hun, 216; *Searle* v. *Lindsay*, 11 C. B. [N. S.] 429; *McMahon* v. *Henning*, 11 Rep. No. 2, p. 42; *M. & M. R. R.* v. *Smith*, 6 Rep. 264.)

*Clifford A. H. Bartlett* for respondent. A person, to whom a corporation delegates executive duties, the appointment and dismissal of laborers and employers, stands in the place of the corporation and is not a co-servant. (Shearman & Redfield on Negligence, § 103; Wharton on Negligence, §§ 222, 223, 235; Thompson on Negligence, vol. 2, p. 1030;

*Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 171, 175, 176;
*Flike* v. *Boston & Alb. R. R.*, 53 id. 553; *Laning* v. *N. Y.
Cent.*, 49 id. 533; *Brickner* v. *N. Y. C. R. R.*, 2 Lans. 517;
affirmed, 49 N. Y. 672; *Malone* v. *Hathaway*, 64 id. 9;
*Bradley* v. *N. Y. C. R. R.*, 62 id. 99; *Booth* v. *B. & A. R.
R.*, 74 id. 40; 22 Alb. L. J., No. 3, p. 54; id., No. 22, p. 483;
*Eagan* v. *Tucker*, 18 Hun, 348–349; *Fort* v. *Whipple*, id. 591.)
A corporation is liable to its servant for any injury happening
to him in furnishing implements and facilities improper and
unsafe for the purposes to which they are to be applied. (*Spel-
man* v. *Fisher Iron Co.*, 56 Barb. 155–165; *Le Clair* v. *The
First Division of the St. P. & P. R. R.*, 20 Minn. 9; *Stod-
dard* v. *St. Louis, K. City & N. R. R.*, 65 Mo. 520; *Dobbin*
v. *Richmond & Danville R. R. Co.*, 81 N. C. 547; *Deveny*
v. *Vulcan Iron Works*, 4 Mo. 236; *Mullen* v. *Philadelphia &
Southern Mail Steamship Co.*, 78 Penn. St. 26, 32; *Whalen* v.
*The Centenary Church*, etc., 62 Mo. 326; *Gormley* v. *Vulcan
Iron Works*, 61 id. 492; *Railway Co.* v. *Leus*, 33 Ohio, 200;
*Railroad Co.* v. *Keary* [1854], 3 Warren & Smith [Ohio], 209,
210; *Railway Co. Fort*, 17 Wall. 559; *Ford* v. *Fitchburg R.
R.*, 110 Mass. 260; *Hough*, etc. v. *The Texas & Pac. R. R.
Co.*, 10 Otto, 213.) Where the superior servant, by means
of an authority which he exercises by delegation of the master,
wrongfully exposes the inferior servant to risks and injury, the
master must respond. (*Chicago & N. W. R. R.* v. *Bayfield*,
37 Mich. 213; *Berea Stove Co.* v. *Craft*, 31 Ohio, 292; *Brab-
bits* v. *Chicago & N. W. R. R.*, 38 Wis. 289.) The yard-
master, Luke, stood in the place of the company *pro hac vice.*
(*Smith* v. *Chicago, Mil. & St. P. R. R.*, 42 Wis. 526; *Ford*
v. *Fitchburg R. R.*, 110 Mass. 240.)

Finch, J. The doctrine established by our decision in *Crispin*
v. *Babbitt* (81 N. Y. 516) is fatal to the plaintiff's claim. The
yardmaster, through whose negligence the injury occurred, must
be deemed to have been a fellow-servant of the deceased, as to
all acts done within the range of the common employment,
except such as were done in the performance of some duty

which the master owed to his servants. The act, in the present case, was very plainly not of that character. The yardmaster was charged with the duty of making up the trains and distributing the cars in and about the yard, and the repair-shops of the defendant, and the deceased was employed by him to assist in that service. As a necessary consequence, broken and disabled cars had to be handled and moved to the repair-shops, and whatever of risk was inseparable from their damaged condition, and the inconvenience, and even danger, of getting them to the shops was an open and palpable risk of his employment, which the deceased assumed. It is, of course, no ground of liability of the company that the bumpers of this car were broken, and it could not be coupled in the ordinary way. The deceased was employed to handle and move to the repair-shops damaged and disabled cars, and took the risk of his employment in that respect. While engaged in attaching the broken car to the one in front with the aid of a chain, and by direction of the yardmaster, the latter negligently, and at the wrong moment, signaled to the engineer to back his train, and as a consequence the deceased was crushed between the cars. The negligence which caused the injury was in no sense that of the master. In moving this train the yardmaster was acting not as the agent of the master in the performance of the master's duties, for it was not the latter's duty to effect the coupling of these cars and their movement to the repair-shop. What the yardmaster was doing was the work of a servant, in the department of labor and duty assigned to him as such. No duty which the master owed to his servants was being done by the yardmaster from the negligent performance of which the injury resulted. The question of liability was distinctly raised upon a motion for a nonsuit, based upon the grounds that the acts of the yardmaster, so far as they tended to cause the injury, were those of a fellow-servant with the deceased, and that there was no evidence of any failure to perform the duties which defendant owed to deceased, either on its part or on the part of any person to whom it had delegated the performance of such duties.

The motion should have been granted, and its denial was error, for which the judgment should be reversed.

All concur, except DANFORTH, J., not voting, and RAPALLO, J., absent.

Judgment reversed and new trial granted, costs to abide the event.