DAVID B. EWAN v. HEWLINGS LIPPINCOTT.

The defendant owned a saw-mill, and gave an order to D. & W., master machinists, to make some alterations in the gearing of the water-wheel of his mill. D. & W. sent the plaintiff and another workman to do the work. It was understood between these workmen and the defendant that the mill would run at such times as they were not actually at work upon the wheel. While they were at work upon the wheel the engineer of the defendant negligently started the wheel, injuring the plaintiff. *Held*, that plaintiff was a servant of the defendant, engaged in a common employment with the engineer.

On a rule to show cause why a new trial should not be granted. The facts will appear in the opinion.

Argued at November Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the rule, *P. L. Voorhees.*

*Contra, T. B. Harned.*

The opinion of the court was delivered by

REED, J. This action was brought to recover damages for an injury received by the plaintiff in the mill of the defendant. The plaintiff is a machinist, and while at work upon the water-wheel of defendant's saw-mill the wheel was suddenly put in motion by the engineer employed by the defendant, and the hand of the plaintiff was crushed.

The trial justice charged the jury, *inter alia*, that if the accident was the result of the negligent act of the engineer then the defendant, the master of the engineer, was responsible for the result. In answer to the objection interposed by defendant's counsel that the engineer and machinist bore to each other the relation of fellow-servants, and so the master was not chargeable with an injury to one caused by the negligent

act of the other, he charged that they were not serving the same master, and so were not engaged in a common employment.

It appears from the evidence that the plaintiff was employed in the regular business of a firm of machinists named Derby & Weatherby, and that they, upon an order given to them by the defendant to make some alteration in the gearing of his water-wheel, sent the plaintiff with another of their workmen to execute the order.

Upon this appearing in the case it was urged below, and there accepted as the law and is now insisted here, that while the engineer was the servant of the defendant, the plaintiff was the servant of Derby & Weatherby, and as their employment was by different masters, they were not fellow-servants.

In respect to this phase of the plaintiff's case it would seem that if it be admitted that the service in which Derby & Weatherby were employed was a service in common with that of the engineer, then the service of the workmen sent by the firm was also a common service. And I think it would follow that in respect to the rule which relieves the master from liability for injuries received by one at the hands of another fellow-servant, the workman was to be regarded, while doing this work, as the servant of the defendant.

The owner of the mill had the control of the workmen to the same degree that he would have had over the masters of the workmen had they done the work personally. He had the power to direct the work in regard to the extent and character of the alterations, and in respect to the time at which and the circumstances under which it was to be done. He had the power to change, terminate or suspend the work at any moment. Had an injury resulted to a third person by reason of the negligent act of such workman while acting within the line of the employment for which Derby & Weatherby had been engaged, there could be no doubt that the defendant would have been liable to the injured person. *Stone* v. *Coleman*, 15 *Pick.* 297.

An examination of the cases in which the character of a

servant has been considered will, however, disclose the fact that there is no legal test of service by which in all cases it can be determined whether an employee is a servant. He may be a servant for one purpose and a volunteer or contractor for a different purpose. He may be the servant of one master viewed in one aspect, and at the same time be considered as the servant of another person for the purposes of carrying out a legal policy.

Concerning this last remark, Mr. McDonnell, in his well-digested book on this branch of the law, speaking of the observation of Baron Parke that a man cannot be the servant of several masters at the same time, thus writes: "A cannot be the servant of B and C in the sense that he is bound to obey both. He may, however, be the servant of both in such a sense that he may be prosecuted for embezzlement by B or C as a clerk or servant; that B or C may be liable to strangers for his torts; and that while the servant of B he cannot claim damages against C for the acts of C's servants, inasmuch as he is in law their fellow-servant." *McDonnell on Master and Servant* 46.

The accuracy of the last clause in the above observation is apparent from an examination of a number of cases in which this duality of service was recognized. In the case of *Wiggett* v. *Fox*, 11 *Exch.* 832, the defendants, who had contracted with the Crystal Palace Company to erect a tower, made a subcontract with M and four others to do by piece particular portions of the work. The workmen of the subcontractor were paid weekly by the defendants, according to the time which they worked. The subcontractor received from the defendants' foreman directions as to the execution of the piece-work. The persons who contracted with the defendants to do piece-work signed printed regulations by which they were not at liberty to leave their employment till after they had completed their work, and had given a week's notice. A man who was employed by a subcontractor was killed by a workman in the service of the defendants. The jury found that the deceased was the servant of the subcontractor. The court

remarked that the subcontractor and all his servants must be considered, for this purpose, the servants of defendants whilst engaged in doing work, each devoting his attention to the completion of whole work, and working together for that purpose.

In the case of *Johnson* v. *City of Boston*, 118 *Mass.* 114, an action was brought against the city of Boston for an injury caused by the falling in of a sewer through the negligence of a servant of the city. The plaintiff was employed by one Tinkham, whose business was the blasting of rock for whomsoever employed him. Tinkham sent plaintiff to blast out the bottom of a sewer for defendants. The city employed Tinkham, paying him for each man a *per diem*. The court, in holding that the plaintiff was a fellow-servant with the workman who caused the injury, remarks: "If Tinkham, the plaintiff's employer, had been the person injured while engaged in the same work, he would clearly have been in the position of a fellow-servant with those who excavated the earth. The only point of difference in the position of the plaintiff is that by virtue of a previous agreement between himself and Tinkham the latter was entitled to determine whether and how long he should be employed upon any part of defendant's work, and to receive from defendant the compensation due for such service. But while he was so employed he was in the service of the defendant, doing the work of the defendant, of which Tinkham had no control, and in the result of which he had no further interest than to receive the reasonable or stipulated rate of wages as for a personal service. The existence of this general relation of master and servant between the plaintiff and Tinkham does not exclude a like relation with the defendant to the extent of the special service in which he was actually engaged. This was conceded in *Kimball* v. *Cushman*, 103 *Mass.* 194, as to liabilities to a stranger for the negligence of one employed in a special service. The result of the discussion and the authorities cited in *Hilliard* v. *Richardson*, 3 *Gray* 349, would seem to be that while engaged in the work of excavating the sewer the plain-

tiff was the servant of the defendant, so far as to make the defendant liable to strangers for the negligent conduct of that work." The liability of a master for the acts of a person employed by his servant is further exhibited in the cases cited by Mr. Wood in his work on Master and Servant (section 308.) The result of all these cases is to place the plaintiff in the position which would have been occupied by Derby & Weatherby, and so far as concerns the work done upon defendant's mill, to place him in the position of servant of the defendant.

There is another condition required, however, beyond the fact that the injured and the injuring servant were in the service of the same master, to relieve the defendant from the operation of the rule of *respondeat superior*. The service must not only be under the same master, but the employment must be one having a common object. The most approved test of an employment of this character is whether the injured servant can be said to have apprehended the possibility of injury from another servant while engaged in the service for which he hires. It is not necessary that both be engaged in the same or even similar acts, so long as the risk of injury from the one is so much a natural and necessary consequence of the employment which the other accepts that it must be included in the risks which have to be considered in his wages. *Underhill on Torts* 52.

Similar language was employed in the case of *Morgan* v. *Vale of Neath Railway Co., L. R.,* 1 *Q. B.* 149, and in the case of *Lovell* v. *Howell, L. R.,* 1 *C. P. Div.* 161; and this test was adopted by the Court of Errors in the case of *Burns* v. *McAndrews,* 10 *Vroom* 117. The language used is this: "Common employment is service of such kind that in the exercise of ordinary sagacity all who engage in it may be able to foresee, when accepting it, that through the negligence of fellow-servants it may probably expose them to injury."

The two cases in the Court of Queen's Bench and Court of Common Pleas Division have been by me selected from a number of cases in the English courts in which the same test has been recognized and applied, and the facts to which this

rule was applied in the first of those two cases are, in my judgment, much like the facts in the present cause.

In this case of Morgan v. Vale of Neath Railway Co. the facts were these: The plaintiff was in the employment of the railway company as a carpenter, to do any carpenter work for the purposes of the company. He was standing on a scaffolding, at work on a shed close to the line of the railway, and some porters in the service of the railway company shifted an engine on a turn-table so that it struck a ladder supporting the scaffold, by which means the plaintiff was thrown down and injured. The court held that the carpenter and porters were fellow-servants.

Not unlike this case is that of *Besel* v. *N. Y. C. & H. R. R. R. Co.*, 70 *N. Y.* 171. The plaintiff was a car-repairer, and while under a car at work, an engine started to draw off from the repair track such cars as had been repaired. A coupling broke and some cars descended, struck the car which deceased was repairing, and killed him. It was held that the yardmaster and head brakemen were co-employees of the car-repairer, and for the negligence of either of the two former the defending company were not liable to the plaintiff. To the same effect, and involving nearly the same facts, is the case of *Valtez* v. *Ohio and Mississippi Railway Co.*, 85 *Ill.* 500.

In respect to the rule that the common employments may be dissimilar and in different departments of the same business, the case of *Ross* v. *N. Y. C. & H. R. R. R. Co.*, 5 *Hun* 488 ; *S. C.*, 74 *N. Y.* 617, is instructive. The plaintiff was engaged in the capacity of a surveyor and was injured through the negligence of a conductor while he was being transported, free of charge, from his place of residence to his work. It was held that he was a co-employee of the conductor.

So, in the case of *McCosker* v. *Long Island R. R. Co.*, 84 *N. Y.* 77, a man employed by the yardmaster was killed through the negligence of the yardmaster. It was held that they were engaged in a common employment.

So, in the case of *Gillshannon* v. *Stony Brook Railway Cor-*

*poration,* 10 *Cush.* 228, a common laborer engaged in repairing the road-bed was killed, while riding in a train to his work, by the negligent management of the train ; it was held that there could be no recovery. To the same purport is the case of *Ryan* v. *Cumberland Valley R. R. Co.,* 23 *Penna. St.* 384.

In the English cases the remark of Mr. McDonnell that the courts have given a very wide signification to " fellow-servants" is illustrated by the cases cited by him. *McDonnell on Master and Servant* 304.

Now, from this statement of the general principle upon which the determination of a common service rests, and in view of the cases in which it has been illustrated, let us turn to the posture of the parties in the present action. The defendant was engaged in the business of cutting timber by means of a mill run by water or steam. He employed hands to operate the mill, among them an engineer. He called in the plaintiff to make some changes in the gearing of the machinery, and, while the latter was at work, he received the injury, by reason, as he claims, of the negligent act of the engineer in starting the wheel upon which he was at work.

If the mechanic had been engaged, generally, to keep the mill in repair, and had received this injury while engaged in such general employment, would there exist a doubt that he was a co-servant with the others employed about the mill, engaged in a common service? The general object was the preparation of uncut timber for the market, by turning it into lumber.

Now, this mechanic was certainly as closely connected with the common object as the carpenter, car-repairer or road-repairer was to the common purpose of a railroad company.

He would seem to be so clearly within the rule of a common service that discussion would be wasted.

Nor can I perceive in what way this case is variant from the fact that this service was an occasional or job service.

It is the quality, not the length of time or extent of the work, which fixes, in this respect, the character of the servant

and service. The servant may be engaged by the day, week or year, or by piece-work, yet if his employment is in the way of accomplishing a result which other employees are also working to bring about, their service is common. In no case have I discovered a suggestion that the length of time in which the person is engaged in work determines the question of service in respect to the liability of the master for his acts, or for injuries to him at the hands of other servants.

In the argument at bar on this branch of the case, the point made was that the machinist was called upon to equip the mill for work, and that his employment was limited to that, and ceased when that was accomplished; that, on the other hand, the employment of the engineer was limited to running the mill.

But it must be kept in view that the mill had been running, and was to continue running, at intervals, while the alterations were being made. The plaintiff knew this, for, according to his own story of his engagement, the danger of running the mill at all, while he was working, was discussed by himself and the defendant. He says that the defendant promised that the mill should not be started while he was below at work upon the wheel, but it was understood between them that it should run while he was preparing the work for its application to the wheel.

There was conflicting testimony as to what was said by the defendant, but there is no conflict in regard to the fact that the plaintiff understood that the mill was to be operated at such intervals of time as the plaintiff was not actually at work upon the water-wheel. The question is not presented whether the defendant made a promise, for not keeping which he became liable to the plaintiff, but whether the machinist was a fellow-servant of those who were operating the mill. In this aspect of the case, I am unable to distinguish this machinist from the railroad carpenter or the repairer of cars or road-bed of a railway company, who were employed to keep in working order the appliances by which the corporations were enabled to operate their multifarious business. They are each

engaged in forwarding a common enterprise, and are, to all others concerned in the same undertaking, fellow-servants engaged in a common employment.

I think, in ruling otherwise at the trial, there was error, for which there should be a new trial.