## WOODEN *v.* WESTERN N. Y. & P. R. Co.

(*Superior Court of Buffalo, General Term.* December 30, 1891.)

**1. FELLOW-SERVANTS—CONDUCTOR AND BRAKEMAN.**
   Where the determination of the sufficiency of appliances for holding defendant's railroad train in descending a grade was left to its conductor, the decision of the conductor was the decision of defendant, and defendant was liable for the death of a brakeman on such train, caused by the insufficiency of the appliances used.

**2. SAME—PROVINCE OF JURY.**
   Where it appears in such case that, at the time of the accident, the brakemen were performing their duty in trying to set the brakes, the question of defendant's negligence should have been submitted to the jury.

Exceptions from trial term.

Action by Laura Wooden against the Western, New York & Pennsylvania Railroad Company for the death of plaintiff's husband while employed by defendant. Plaintiff was nonsuited, and moves for a new trial on exceptions, which were ordered to be heard at general term in the first instance. New trial granted. For decision on demurrer, see 12 N. Y. Supp. 908.

The plaintiff's husband was killed while an employe on the defendant's road. He was a brakeman upon a train on its way from Buffalo to Emporium. Between Olean and Emporium is an elevation of ground called "Keating's Summit," or "Keating's Mountain." At the foot of the ascending grade the defendant kept an extra engine, called a "pusher," to help trains up the grade; and the defendant had made a standing order that, if the conductor of a train thought it unsafe to take his train down the opposite descending grade, which was done by letting the train go down by its own gravity, he was either to take off a number of the cars at the foot of the ascending grade, or get additional help from the men who were employed about the engine used as a pusher. Goodwin, the conductor, decided to take his entire train over the mountain without additional help. There were about 32 loaded cars in the train. The accident happened in the night-time, January 4, 1890. When going down the grade from Keating's summit, control of the train was lost, it left the track, and Wooden was found dead in the wreck. This action is brought by the widow of Wooden, claiming to be vested with a right to recover damages under the laws of Pennsylvania. See *Wooden* v. *Railroad Co.*, 126 N. Y. 10, 26 N. E. Rep. 1050. On the trial the plaintiff was nonsuited on the ground that she failed to prove negligence on the part of the defendant.

Argued before BECKWITH, C. J., and TITUS, J.

*Harlow C. Curtis*, for plaintiff. *John G. Milburn*, for defendant.

BECKWITH, C. J. It is claimed by the defendant that the railroad company was not chargeable with negligence in the management of its road, nor in the manner of taking the train down the grade from Keating's summit; that, if the entire train was too heavy to be safely taken down the grade that night, the attempt was the fault of the conductor; and that the decision of the conductor that he could take the entire train over the grade safely was the act of a co-employe of the deceased brakeman. An engine, with a tender, attached to a train of 30 loaded cars, no air or steam brakes, a hand-brake on the tender, and hand-brakes on the cars, a frosty night, the rails likely to be slippery,

the train to be taken down a mountain grade by the force of gravity, attended by the dangers of momentum, it was the duty of the master to determine whether the engine and the means provided for holding or braking the train, both men and mechanical appliances, were sufficient to resist the force of gravity, and the tendency of such a moving body to accelerated motion, and to protect from the consequences of momentum; it was the master's duty to determine whether these were sufficient to enable the employes, exercising that skill and care which could be expected from servants in that grade of employment to take the train down safely. It is the duty of the master to determine whether a train of a certain size and character can be safely run over a certain bridge by steam-power, or let down a certain mountain grade by gravity. In this case the defendant was bound to know the difficulty and danger of letting the train down by gravity, and to provide, by whatever means might be necessary, for the performance of the act safely, and it could not shuffle off that responsibility by leaving the matter to the judgment of an employe. Therefore, when Goodwin determined that he could take the train of 32 loaded cars down the grade with only the three brakemen he had with him, his determination was an act of the master. In the cases cited by the defendant's counsel, namely, Crispin v. Babbitt, 81 N. Y. 516; McCosker v. Railroad Co., 84 N. Y. 77; Slater v. Jewett, 85 N. Y. 72; Loughlin v. State, 105 N. Y. 159, 11 N. E. Rep. 371; Besel v. Railroad Co., 70 N. Y. 171; Hussey v. Coger, 112 N. Y. 614, 20 N. E. Rep. 556; Newbauer v. Railroad Co., 18 Wkly. Dig. 402; Beilfus v. Railway Co., 29 Hun, 556,—one can plainly see, in most of them, that the act of negligence specified as the cause of the injury was the act of a servant working with others in the actual performance of a practical undertaking within the scope of the defendant's business. The negligent servant and the servant injured were co-operatives. But when it is left to a servant to decide that it is not necessary to divide a train, or lighten it, or when it is left to him to decide that a train of a certain size, with a certain kind of engine, and with a certain number of brakemen, can be safely run over a specified route, the decision of the servant is the decision of the master; for it involves a consideration of the condition of the tracks, the character of the grades, and the sufficiency of the means furnished the employes for the management of the train. An employe, helping to run such a train, does not, when he enters the service of a company, contract to take the risk of the soundness of the judgment or the skill or carefulness of a co-employe in such a matter. When he enters such service the law declares for him that the master will see to it that he shall have furnished him appliances reasonably safe and sufficient for the place and occasion of his employment. It was the defendant, then, that ran the train that night over Keating's mountain. The plaintiff claims that the defendant was guilty of negligence in trying to let a train of the size and weight of that one down the mountain grade by its own gravity, with the appliances and means of control with which the train was supplied. I think there was evidence sufficient to carry the case to the jury upon the question of such negligence. The evidence tends to show that the brakemen were not sleeping, but attending to their proper duties in trying to set the brakes; and the evidence tends strongly to support the conclusion that the accident happened as a consequence of the insufficiency of the means provided for resisting the gravity and momentum of the train. In this decision I have asserted propositions rather than attempt to exhibit the truth of them by argumentation. Most of the written opinions upon the subject of the question whether an act is the negligence of the servant or the master consist in. the expression of the direct judgment of the court upon the character of the act, without analysis or demonstration. The usual formula is that the court thinks the act was or was not one belonging to the duties of the master. The higher courts will ultimately furnish the criteria by which one may safely determine whether a certain negligent

act is on the master's side or the employe's side of the line that divides their responsibilities. In this case I think the motion for a new trial should be granted.