## HOUSER v. C., R. I. & P. R. Co.

1. **Railroads:** INJURY BY NEGLIGENCE OF CO-EMPLOYE: STATUTE CONSTRUED. An employe of a railroad company, who is foreman of a crew, with the power to direct the men under him in their work, and to hire and discharge them at will, is a co-employe with the men under him, in contemplation of section 1307 of the Code, and may recover of the railroad company for injuries received in the course of his employment by reason of the negligence of the men in his crew.

2. ———: ———: CONTRIBUTORY NEGLIGENCE: QUESTION OF LAW OR FACT. The evidence in this cause (for which see opinion) *held* to present a case where the jury, and not the court, should determine whether, under all the circumstances, the plaintiff was guilty of contributory negligence; and instructions to the effect that, under the evidence, as matter of law, it was negligence for the plaintiff merely to direct the men what to do, without seeing, either by his own observation or by that of some competent person, that the orders given were obeyed, and that, if he was guilty of such negligence, he could not recover, were properly refused.

*Appeal from Scott Circuit Court.*

TUESDAY, DECEMBER 12.

THIS is an action for a personal injury. There was a trial by jury which resulted in a verdict and judgment for plaintiff, and defendant appeals. The facts of the case appear in the opinion.

*Cook & Dodge*, for appellant.

*W. A. Foster*, for appellee.

ROTHROCK, J.—I. The plaintiff was foreman of a crew of men employed by the defendant in the construction and repair of bridges. They operated a pile-driver, loaded timber upon cars, and conveyed the same on defendant's road. On the 16th day of November, 1880, the plaintiff and the men under his charge were ordered to proceed to a railroad bridge over Cedar Creek, in Jefferson county, and load some timbers upon cars and remove them to another place. The

timbers had before that been taken out of the bridge, and were lying upon the ground below. A flat car was placed upon the bridge, upon which they loaded the timbers, and the distance from the top of the car down to the ground was about eighteen feet. In order to raise the timbers to the car, a pine stick twenty feet long, and six by eight inches, was erected perpendicularly, resting on two blocks, each twelve by twelve inches. This piece of pine timber, when thus used, is called a gin-pole. The bottom or lower end of it was lashed with a rope to one of the pilings of the bridge, and about seven or eight feet above, an iron bolt was put through one of the cap timbers of the bridge, into and through the gin-pole, and the end of the bolt thus driven through was secured by a nut. The pole, being thus fastened, passed up near the flat car, and upon the top of the pole a pulley was affixed, through which a rope passed to a snatch-block at the opposite side of the car, and thence to the pile-driver where the steam power was applied to the rope, to raise the timbers to the car. The work had been so far completed that it was necessary to remove the gin-pole to the other side of the bridge. The last two or three timbers raised had been placed upon the car, but had not been piled up on the other timbers. At this time the plaintiff gave orders to some of the men to take down the gin-pole. In so doing they unlashed the pole at the lower end, and one of the employes, named Woodford, drove the bolt back as far as he could with a maul, and then, instead of taking another bolt and using it as a follower to drive out the bolt, he changed his position and struck the pole with the maul and knocked it off the bolt, and it slipped off the blocks on which it rested, and fell in a slanting direction, and, as it fell, an iron bolt or pin through the top of the pole where the pulley was fastened, caught plaintiff by the neck and threw him from the flat car to the ground, breaking both his ankles and inflicting other injuries upon him.

The plaintiff as foreman of the crew had full control over the men under his charge, and they were required to obey his

instructions.  He had the power to employ and discharge them, or any of them, without consultation with, or direction from, any other agent or officer of the defendant; and at the time and place where he received his injury he had full charge of the work, and, in respect to doing the same, was not under the orders of any other person.

The foregoing facts are not in dispute.  Indeed the statement thereof is in substance, and in part in language, the same as a statement made by counsel for appellant in the opening of their printed argument in the case.  The plaintiff claims that he is entitled to recover by reason of the negligence of Woodford in striking the pole and knocking it off the bolt, instead of driving the bolt out of the pole, as it is claimed he was ordered to do.

Counsel for the defendant contend that, conceding that the crew were negligent in taking down the pole, there can be no recovery of the defendant, because the plaintiff and the men under his charge were not co-employes within the meaning of the statute.  They state the question they make in this language: "whether or not an employe, who stands in the relation of vice-principal to men under his control, can recover of a railroad company by reason of the negligence of the men selected by himself, and whom he may discharge or retain in his employment (or the employment of the company) as he sees fit?"

1. RAILROADS: injury by negligence of co-employe: statute construed.

The rule at common law was, that a master or employer was not liable for the damages sustained by an employe from the negligence of a co-employe in the same general service. *Sullivan v. M. & M. R. R. Co.*, 11 Iowa, 421.  Section 1307 of the Code is as follows:—

"Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers, or other employes of the corporation, and in consequence of the willful wrongs,

whether of commission or omission, of such agents, engineers, or other employes, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

It is insisted that the plaintiff is not an employe within the meaning of the statute, but that for all purposes his relation to the men under his charge was that of a principal, and that it was not intended by the statute to give such employes as the men under his charge a right of action against the railroad company, because they had such right without the statute. That such is the rule of the common law seems to be well settled. In Thompson on Negligence, Vol. 2, 1030, it is said; "No doubt all the the American courts will agree to the following statement of doctrine quoted from the text of an eminent writer—(Wharton on Negligence): 'Where the employer leaves everything in the hands of a middle-man, reserving to himself no discretion, then the middle-man's negligence is the employer's negligence, for which the latter is liable.'" See also *Brickner, Adm'x, v. N. Y. Central R. R. Co.*, 2 Lansing, 506, and 46 N. Y., 672.

In *Crispin v. Babbitt*, 81 N. Y., 516, where the superintendent of certain iron works carelessly let steam on an engine near which plaintiff was working, by which plaintiff was injured, the rule was qualified by holding that, although the superintendent represented and stood in the place of the defendant, he did so only in respect to those duties which defendant confided to him as such, and that the act of letting on the steam being merely the duty of an operative, the employe, whatever his rank or title, is a mere servant with respect to that act, and the master is not liable. This case was followed in *McCosker, Adm'x, v. The Long Island R. R. Co.*, 84 N. Y., 77. In *Gormly v. Vulcan Iron Works*, 61 Missouri, 492, this qualification of the rule is denied, and it is held that a superintendent is not a fellow servant, although he engages in the same work with the laborer; and in *Berea*

*Stone Co. v. Kraft*, 31 Ohio St., 387, the same doctrine is held.   These cases are cited by the respective counsel in argument, but we do not think they are of controlling importance in determining the question under consideration.

If the two cases which qualify the rule should be held to be correct, it does not follow that even under the common law the defendants would be liable under the facts of this case for an injury to the foreman or boss of the crew.   The most that can be claimed for the cases is, that they determine that it is not the rank or authority of the superintendent which fixes the liability of his principal, but the particular act which he negligently performed.   In this case the under servant or employe is not the injured party.   We repeat, the rule contended for by counsel is no doubt well established, and is well stated in Sherman and Redfield on Negligence, section 102, as follows:   "One to whom his employer commits the entire charge of his business, with power to choose his own assistants, and to control and discharge them as freely and fully as the principal himself could, is not a fellow servant with those employed under him, and the master is answerable to all the under servants for negligence of such a managing assistant, either in his personal conduct within the scope of his employment, or in his selection of other servants."

Now it is contended that, because, at common law, the employes who were under the control of the plaintiff could have recovered of the defendant for his negligence, the statute was not enacted for their benefit, and could not have been intended for the benefit of employes such as the plaintiff, because he was not an employe of the railroad company in respect to the work in which the men under him were engaged, but was an employer, a representive of the company, standing in its place and stead.

The statute authorizing recovery by employes for the negligence of other employes is very broad and general in its terms.   It makes no distinction as to the character of the employment, or the station or grade of the employe.   If we

should hold that the foreman of a gang of bridge builders is not a co-employe with the men working under his direction, and thus by construction limit the language of the statute, it would lead to all manner of distinctions, which would be extremely difficult of application. We would be called upon to determine whether a conductor under whose orders the brakeman performs his duty, a section foreman whose duty it is to direct the men under his charge, and who, as we understand, employs his men and discharges them at will, and other employes who have the direction and supervision of men under them, come within the provisions of the statute. It seems to us the very language of the statute excludes the idea that an employe cannot recover when he has the control of the employe who is negligent.

The plaintiff was an employe of the defendant. The statute provides that an employe may recover for all damages sustained in consequence of the neglect of agents, or by any mismanagement of the engineers, *or other employes of the* corporation. It cannot be claimed that Woodford, the man who knocked the pole from its fastening, was not an employe of the defendant, because the plaintiff had the power to hire and to discharge him, and to direct him in the performance of his labor. It is not provided that the negligent and the injured employe shall be co-employes in the same general employment, in the sense that they must be equal in power and authority. All that is required is that both shall be employes of the corporation. We think the court correctly refused to instruct the jury that the plaintiff could not recover, by reason of the fact that he was foreman of the crew, with power to direct the men under him in their work, and to hire and discharge them at will.

II. It is urged that the verdict was not sustained by sufficient evidence, because contributory negligence of the plaintiff was shown beyond any question or doubt. And here it is necessary to give a further detail of facts which we think the jury were fairly warran-

2. ——: ——: contributory negligence: questions of law or fact.

ted in finding from the evidence. It appears that the plaint-
iff did not have what was regarded as a full crew of men.
He was an active, strong man himself, and at times he as-
sisted his men in lifting timbers and doing other heavy work.
We do not think that the jury were required to find from the
evidence that the plaintiff was negligent in giving this assist-
ance to the men.

When he gave the order to the men below to take down
the pole, there were four of them on the ground. He directed
them generally, without naming them, to take the lashing off,
and two of them to hold on to the foot, and one man take off
the nut and drive out the bolt clear of the pole, and another
to stand on top of the cap and steady the pole. After giving
these instructions, he turned round to help the men on the
car to put the timbers in proper position. There were but
two men on the car, and his assistance was necessary to
straighten the timbers. After doing this he turned round,
and, to use his own language, "was in the act of looking over
the edge of the car to see what they were doing below, when
the pole fell."

It is argued that plaintiff was negligent, because, after giv-
ing the order, he did not give his attention and see that the
order was carried out; that he was negligent in not supervising
the work, and in leaving it without any oversight whatever,
inasmuch as the taking down of the pole was confessedly at-
tended with danger. We think, under all the circumstances,
this was a question for the jury, and we cannot say that their
verdict was not justified by the evidence. There is no show-
ing nor claim that plaintiff was negligent in employing in-
competent men. Neither is it claimed that the men were
improperly distributed to do the work in loading the timbers.
It is conceded the plaintiff was in his proper place to give
direction to the work. The pole which he ordered the four
men to take down was twenty feet long, and six by eight
inches, and, being seasoned, weighed only from 160 to 200
pounds. Some of the witnesses state that one man could

carry it. A train was due upon the road in a few minutes, and plaintiff had to take his train to a side track several miles distant to allow the expected train to pass.

We do not think that under these circumstances the jury were bound to find that the plaintiff was negligent. They might well have found that the plaintiff was justified in believing that the four men engaged in taking down the pole would follow his directions, and not allow a piece of timber, which one of them could carry, to injure any one.

The defendant asked the court to give two instructions to the jury, which were to the effect that under the evidence, as matter of law, it was negligence for the plaintiff merely to direct the men what to do, without seeing, either by his own observation, or by that of some competent person to direct the men, that the orders given were obeyed, and that, if he failed to exercise such care, he could not recover. The court refused to give these instructions, and we think the ruling was correct; because, as we have stated, we think the evidence presented a case where the jury, and not the court, should determine whether or not, under all the circumstances, the plaintiff should have either personally supervised the taking down of the pole, or deputed another to carry out his orders. The judgment of the Circuit Court will be

AFFIRMED.