MINNIE E. SKINNER *v.* HUGH BUCHANAN ET AL.

January Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, and MOULTON, JJ.

Opinion filed May 11, 1928.

*E. A. Cook* for the defendants.

*Lee E. Emerson* for the plaintiff.

SLACK, J.  This action is to recover damages which plaintiff claims to have sustained by reason of the cutting of two shade trees, a maple and a poplar, that formerly stood in front of premises owned and occupied by her, which premises abut the easterly line of Maple Street in the village of Orleans, but do not include any part of that street.  At the close of all the evidence defendants moved for a directed verdict on two grounds which, in effect, were:  (1) That in cutting said trees defendant Buchanan was acting within the scope of his authority as tree warden of said village and the other two defendants, Milo and Henry Whiting, were acting under the order and direction of Buchanan; and (2) that plaintiff had not shown such property right in said trees as entitled her to recover.  The motion was overruled, to which defendants excepted.

It appears from the printed case that at the time of the acts complained of Buchanan and E. E. Doe and W. B. Dean were the trustees of said village, and that Buchanan was ''one'' of the tree wardens of said village.  We assume, as was stated in argument, that Doe and Dean were the other tree wardens, although this does not appear of record, and in our view of the case is immaterial.  It further appears that in what Buchanan did he acted in good faith and without malice; that it was his opinion that the trees in question were dangerous to the public

in that the maple was rotting and had decayed branches, and the poplar was a nuisance for the reason that its roots grew into and stopped up the sewers and made it necessary to dig up and relay the same. It does not appear, nor is it claimed, that any further or different action respecting the cutting of such trees than that already stated was taken by the municipality or any of its officers.

Shade trees within the limits of a public way or place are declared by G. L. 4144 to be deemed public shade trees; and such trees, except those in public parks and places under the control of park commissioners, are, for certain purposes, express or implied, placed under the care and control of the tree warden of the municipality for which he is elected. G. L. 4144 *et seq.* But the same statute from which tree wardens derive their authority expressly provides the way and manner in which such authority shall be exercised in certain instances. For instance, G. L. 4150 after providing for the cutting and removal of public shade trees by a tree warden "after public hearing thereon at some suitable time and place, due notice of such hearing having been posted in two or more public places in such town or village and upon the tree in question" provides that "a public shade tree within the residential part of a town or incorporated village shall not be cut, except for trimming, nor removed by a tree warden, without a public hearing as aforesaid," etc. It is not claimed that this statute was complied with, or that there was any attempt so to do.

The defendants insist that since Buchanan was a duly elected tree warden for the village of Orleans, and as such was clothed with certain authority respecting the public shade trees of that municipality, they are not answerable for the acts complained of even though the statutory requirement respecting a public hearing was not compiled with, and the statutory in· hibition against action without such hearing was positively violated. In support of this contention they cite *Bates* v. *Horner,* 65 Vt. 471, 27 Atl. 134, 22 L. R. A. 824; *Daniels* v. *Hathaway,* 65 Vt. 247, 26 Atl. 970, 21 L. R. A. 377; and *Robinson* v. *Winch,* 66 Vt. 110, 28 Atl. 884. Those cases do not go far enough to avail defendants. They hold that municipal officers are not liable to private persons for their conduct, whether of omission or commission, if they keep within the scope of their official duties and authority; and such is the well-nigh universal rule.

The trouble here is Buchanan did not keep within the scope of his official duties and authority. His authority, so far as the cutting and removal of public shade trees was concerned, was expressly defined and limited by statute, which statute instead of attempting to observe he directly violated. When the way and manner in which municipal officers shall do certain things respecting matters entrusted to their care and control is expressly prescribed by statute, and especially when the statute forbids that such thing be done in any other or different way or manner, a person who fails to observe such statutory requirement and acts in direct violation of its inhibition cannot justify his conduct by simply showing that he is a municipal officer, and acted in good faith.

It is urged that since by G. L. 4150 the decision of a tree warden, even after the hearing therein provided for, is made final, failure to comply with the statute respecting such hearing was of no consequence. This claim is untenable for at least two reasons. In the first place, if the warden approached the subject with an open mind, as it must be assumed that he would, his conclusion after hearing the pros and cons, if the question was controverted, might be entirely different than if arrived at without such hearing. Then, too, his decision is no longer final, but may be reviewed by the selectmen or trustees upon the request in writing of a party in interest. Act No. 108, Laws 1921. In the circumstances, Buchanan cannot justify the acts complained of, and, since the only authority which the other defendants possessed was derived from him, they stand no better.

This brings us to the second question raised by the motion.

It should be borne in mind from the outset that we are not dealing with the rights of an abutting owner as against the public, or public officers acting within the scope of their official authority, but rather with the rights of such an owner against individual wrongdoers, for such, as already seen, was the status of defendants.

While questions respecting the rights of landowners and the public in highways the fee to which was in the former have been before this Court (among the cases see *Holden* v. *Shattuck*, 34 Vt. 336, 80 A. D. 684, and *Cole* v. *Drew*, 44 Vt. 49, 8 A. R. 363) we have but a single instance, so far as we are aware (*Ferre* v. *Doty*, 2 Vt. 378), where a landowner has attempted to recover

damages for acts committed on adjoining property the fee to which was in the public; and that case, which was trespass q. c., was evidently brought on the theory that the fee to the *locus* was in the plaintiff, and, the contrary appearing, the right to recover was denied. So we are without light on the question so far as our own cases are concerned. When we turn to the decisions in other jurisdictions, we find them conflicting, and often in the same state irreconcilable in principle. As was observed in *Sauer* v. *City of New York*, 206 U. S. 536, at page 548, 51 L. ed. 1176, 27 Sup. Ct. 686, 690: "The courts have modified or overruled their own decisions, and each state has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy." The only thing which the authorities touching the subject established to a certainty is that we are not hampered by generally recognized precedents.

While municipalities are universally recognized as having the control and management of public streets and highways, which embraces authority to so construct, change, and maintain them as will best serve the public necessity and convenience, irrespective of the ownership of the fee; abutting owners, as we shall see, have certain rights in such streets and highways which cannot be violated with impunity by those acting without authority, even though the fee be in the public. In other words, the enforcement of those rights, as against wrongdoers, does not depend upon whether the fee to the highways is in the public or in the abutting owner.

Mr. Dillon in his work on Municipal Corporations (5th ed.) Vol. III, par. 1136, although speaking of the relative rights of abutters and the public, after referring to certain cases which assert or assume that important differences as to the nature and extent of the rights of the abutter and the municipality depend upon the question of whether the fee is in the one or the other says: "The later and best considered judgments hold that it is comparatively unimportant, as respects the relative rights of an abutting owner and the public in and over streets, whether the *bare fee* is in the one or the other. If the fee is in the public, the lawful rights of the adjoining owners are in their nature *equitable* easements; if the fee is in the abutter, his rights in and over the street are in their nature *legal;* but, in the absence of controlling legislative provisions, the extent of such right is,

in either event, substantially, perhaps precisely, the same."
Clearly, no greater significance can attach to the ownership of
the fee where the rights of an abutter as against an individual
wrongdoer are alone involved. In McQuillin on Municipal
Corporations, Vol. III, par. 1326, it is said: "This question as
to the ownership of trees is usually of little importance, how-
ever, since the right of the city to remove trees does not, it
seems, depend on the ownership of the fee in the street or of the
trees, nor does the right of an abutting owner to recover from a
public service corporation or other third persons for injury to
trees or his property from the cutting thereof."

The rights of an abutting owner in an adjacent street
or highway are of two distinct kinds, public rights which he en-
joys in common with all other citizens, and certain private rights
which arise from the ownership of property contiguous to the
highway, which are not common to the public in general, and this
irrespective of whether the fee to the highway is in him or in the
public. Certain of the latter rights constitute property, or prop-
erty rights, of which an abutter cannot be unlawfully deprived.
13 R. C. L. 142, 29 C. J. 574, and cases cited. While the cases
involving such rights relate, mainly, to questions of ingress and
egress, light and air, and lateral support, neither logic nor
sound legal principle exclude the recognition of other rights
equally valuable to an abutting owner. Why allow damages for
the obstruction of light and air and not for the destruction of
ornamental shade trees? Or, why allow damages for unneces-
sary interference with lateral support, which usually consists of
merely removing the soil that supports abutting soil, and with-
hold them for the unnecessary removal of trees which grow
above the soil, and enhance the value of abutting property per-
haps as much as does its lateral support? The basis of recovery
in either instance is the injury resulting to abutting property
by the doing of some act not contemplated or authorized by the
Legislature.

Without dwelling upon the modern tendency to plant, and
in various ways protect, shade trees in public ways and places,
it is enough to say that such tendency exists, as is evidenced by
the various provisions of the statute already referred to, and by
Sections 6950 and 6953, which penalize the destruction or in-
jury of such trees. Such trees are a part of the street, to be
used and enjoyed by the traveling public the same as a good

roadbed, sidewalk, pavement, or anything else in the street which contributes to the comfort or the pleasure of the traveler; and, generally speaking, whatever renders a street more valuable to the people at large renders it more valuable to an abutting owner, since, as already seen, he has all their rights besides others peculiar to himself. The precise question under consideration was before the court in *Donahue* v. *Keystone Gas Company,* 181 N. Y. 313, 73 N. E. 1108, 70 L. R. A. 761, 106 A. S. R. 549, which is the leading case on the subject. That was an action by an abutting owner, who had no title to any part of the street, against a gas company for the destruction by escaping gas of shade trees that stood in front of his premises, but within the street limits, and it was held that the plaintiff had a property right in the trees sufficient to support the action. Other cases recognizing the right of an abutting owner to maintain an action for damages resulting to his premises from the wrongful cutting and removal of shade trees growing in front of such premises, but within the limits of a street the title to which was in the public are: *Adams* v. *Syracuse Lighting Co.,* 137 App. Div. 449, 121 N. Y. S. 762; *Lane* v. *Lamke,* 53 App. Div. 395, 65 N. Y. S. 1090; *Norman Milling & G. Co.* v. *Bethurem,* 41 Okl. 735, 139 Pac. 830, 51 L. R. A. (N. S.) 1082; *Stocking* v. *City of Lincoln,* 93 Nebr. 798, 142 N. W. 104, 46 L. R. A. (N. S.) 107; *Slabaugh* v. *Omaha Electric L. & P. Co.,* 87 Nebr. 805, 128 N. W. 505, 30 L. R. A. (N. S.) 1084. See, also, McQuillin on Municipal Corporations, *supra.*

We think these decisions stand on sound legal principle. We can discover no logical distinction between an abutter's right to light, air, etc., and his right to shade, and the adornment of his premises by trees and ornamental shrubs. If he is entitled to redress for wrongful interferences with the former rights, he should be for like interferences with the latter. We hold, therefore, that plaintiff had a property right in the trees in question sufficient to enable her to maintain this action. This disposes of the only questions briefed.

*Judgment affirmed.*