10 So.2d 827

**KITTRELL, Rent Director, v. HATTER.**

1 Div. 180.

Supreme Court of Alabama.

Nov. 27, 1942.

474

David Ginsburg, Gen. Counsel, Brunson Mac Chesney, Asst. Gen. Counsel, and Philip Weltner, Regional Atty., all of Washington, D. C., Jack Crenshaw, Ala. State Atty., of Montgomery, and Harry W. Jones, all of Washington, D. C., for appellant.

Smith, Hand & Arendall and Harry T. Smith & Caffey, all of Mobile, for appellee.

BOULDIN, Justice.

Appellee, E. Lyles Hatter, the owner of properties rented for housing purposes in Mobile, filed a bill in equity against appellant, Henry J. Kittrell, as Rent Director of the Mobile Defense Rental Area of the Office of Price Administration, to enjoin the respondent from enforcing Regulation No. 4 promulgated by Leon Henderson, Administrator, under authority of Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix § 901 et seq.

The Regulation, in effect, froze rents in that area at the level prevailing on April 1, 1941.

The bill challenges the validity of the rent provisions of the Emergency Price Control Act upon constitutional grounds, especially as violative of the Fifth Amendment to the Constitution of the United States.

It is charged that the Act and the administrative regulations made pursuant thereto result in depriving complainant of his property without due process of law and impose such burden upon his property rights as to constitute a taking for public use without just compensation.

In some detail it is alleged that enforcement of the rent regulations by the local Director prevents the complainant from collecting reasonable rents as per contract with his tenants, deprives him of a reasonable return or income upon his property, prohibits him from ousting tenants as per lawful contract, authorizing them to hold possession upon payment of rents fixed on an arbitrary basis, confiscatory in character, and further alleges that the Act furnishes no adequate procedure for relief through the Emergency Court of Appeals set up under the Act and proceedings for review by the Supreme Court of the United States.

Respondent filed demurrers going to the equity of the bill for injunctive relief.

The court below overruled the demurrers and respondent appeals.

Choosing our own method of approach, we deal with what we consider the fundamentals of the situation.

■ This is war time. We are dealing with war measures. The power of the Nation to conduct war and the power to make laws and regulations needful in the conduct of the war are fundamental. They are granted to the Federal government by the same Constitution on which this complainant relies for the protection of his property rights in war time. In the case of Ex parte Quirin et al., 63 S.Ct. 2, 10, 87 L.Ed. ——, decided October 29, 1942, the Supreme Court of the United States gave expression to the law, which we here quote:

"Congress and the President, like the courts, possess no power not derived from the Constitution. But one of the objects of the Constitution, as declared by its preamble, is to 'provide for the common defence'. As a means to that end the Constitution gives to Congress the power to 'provide for the common Defence', Art. I, § 8, cl. 1; 'To raise and support Armies', 'To provide and maintain a Navy', Art. I, § 8, cls. 12, 13; and 'To make Rules for the Government and Regulation of the land and naval Forces', Art. I, § 8, cl. 14. Congress is given authority 'To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water', Art. I, § 8, cl. 11; and 'To define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations', Art. I, § 8, cl. 10. And finally the Constitution authorizes Congress 'To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.' Art. I, § 8, cl. 18.

"The Constitution confers on the President the 'executive Power', Art. II, § 1, cl. 1, and imposes on him the duty to 'take Care that the Laws be faithfully executed'. Art. II, § 3. It makes him the Commander in Chief of the Army and Navy, Art. II, § 2, cl. 1, and empowers him to appoint and commission officers of the United States. Art. II, § 3, cl. 1.

"The Constitution thus invests the President as Commander in Chief with the power to wage war which Congress has declared, and to carry into effect all laws passed by Congress for the conduct of war and for the government and regulation of the Armed Forces, and all laws defining and punishing offences against the law of nations, including those which pertain to the conduct of war."

■ We further quote from United States v. MacIntosh, 283 U.S. 605, 607, 622, 51 S.Ct. 570, 574, 75 L.Ed. 1302: "From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense, of that term; prices of food and other necessities of life fixed or regulated; railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war."

We quote from the first Section of the Emergency Price Control Act the following: "Section 1 [§ 901]. (a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to pre-

vent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments; which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values," etc.

■ This recital in the Act of Congress is in the nature of a finding of facts and the conclusion of the Congress that the Act following this announcement was a necessary and proper emergency measure in war time for the successful prosecution of the war. Such finding of the Congress of the United States, charged with the responsibility of declaring war and passing appropriate war legislation, and in position to view the whole picture, is entitled to the utmost respect. Block v. Hirsh, 256 U.S. 135, 154, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165.

Section 204(d) provides: "The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2 [section 902 of this Appendix], of any price schedule effective in accordance with the provisions of section 206 [section 926 of this Appendix], and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

■ The constitutionality of Section 204(d) rests squarely upon these well established constitutional principles:

1. A case in which the validity of a federal statute or regulation is called into question is a case or controversy arising under the Constitution or laws of the United States.

2. Under Article III of the Federal Constitution, the judicial power of the United States extends to all cases or controversies arising under the Constitution or laws thereof.

3. Congress may withhold from state courts jurisdiction over any matter within the judicial power of the United States. Cohens v. Commonwealth of Virginia, 6 Wheat. 264, 19 U.S. 264, 5 L.Ed. 191; Osborn v. Bank of United States, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204; State of Tennessee v. Davis, 100 U.S. 257, 25 L. Ed. 648; Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577; Martin v. Hunter's Lessee, 1 Wheat. 304, 14 U.S. 304, 4 L.Ed. 97; The Moses Taylor, 4 Wall. 411, 71 U.S. 411, 18 L.Ed. 397; Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833; Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706.

■ These principles furnish the basis for removal of causes presenting a federal question; that is to say, when the correct decision depends on the correct construction of the Constitution or law of the United States. 54 C.J. 231, § 48.

■ A bill challenging the validity of an Act of Congress upon the ground that it is in violation of the Constitution in that it denies to complainant the protection of property rights guaranteed by the Constitution turns upon the construction of the Constitution and the Act of Congress. Certainly, such action would be removable but for the provision of the Act in question denying to the District Courts jurisdiction to enjoin the enforcement of the Act or regulations thereunder; and this feature of the Act purporting to vest exclusive jurisdiction in a court created for the purpose, subject to review by the Supreme Court, when challenged as violative of the Constitution, presents also a federal question.

In view of these principles, appellant insists Section 204(d) is effective and denies to the State Court all jurisdiction to consider the constitutionality of the substantive provisions of the Act or regulations pursuant thereto. The brief and argument for appellant is principally directed to this inquiry, and should be considered.

Appellee's answer, in effect, is that the entire Act is unconstitutional, and this feature of the Act must fall with the whole.

At bottom this view asserts jurisdiction in the State Court to decide the federal question, the constitutionality of the substantive provisions of the Act, the very question sought to be withdrawn from its jurisdiction, and strike down the withdraw-

al provision upon its findings touching the federal question involved.

■ Apart from the provisions of the Act to the effect that the unconstitutionality of any provision of the Act should not affect other provisions, the logic of appellee's position is unsound. Such reasoning would defeat the power of Congress to withdraw from State Courts jurisdiction over a most vital federal question, the constitutionality of an Act of Congress, which can never be finally settled short of a decision by the Supreme Court of the United States. We consider Section 204 (d), dealing with jurisdiction of the State Court, a thing apart from the substantive provisions of the Act, a provision within the constitutional power of Congress. It results there was no jurisdiction in the State Court to deal with the constitutionality of the substantive provisions of the Act or regulations pursuant thereto, and such questions are not here for decision.

We cite without comment decisions relied upon by appellant, not that we deem them directly in point, but as dealing with principles having such bearing as to be pursuasive of the views we have expressed. Ableman v. Booth, 21 How. 506, 62 U.S. 506, 16 L.Ed. 169; Arrow Distilleries v. Alexander, D.C.D.C.1938, 24 F.Supp. 880, affirmed per curiam, 306 U.S. 615, 59 S.Ct. 489, 83 L.Ed. 1023; Clark v. Lindemann & Hoverson Co., 7 Cir., 1937, 88 F.2d 59, certiorari denied sub nom. Marathon Electric Mfg. Co. v. Clark, 300 U.S. 681, 57 S.Ct. 752, 81 L.Ed. 885; Paramino Lumber Co. v. Marshall, 9 Cir., 1938, 95 F.2d 203, certiorari denied 305 U.S. 603, 59 S. Ct. 63, 83 L.Ed. 382.

■ We deem this holding a decision upon a federal question, reviewable as other decisions of this court on federal questions.

Our decision might end here. But, in view of our war emergency, the war powers and the objective of this Act, as disclosed in excerpts hereinbefore set out, we indulge in further comment on injunction suits which, within themselves, if entertained tend to hinder the national war effort.

■ This court here now finds and declares as a matter of current history within the knowledge of all men that the urgent necessity to produce all the sinews of war, a mechanized global war, has necessitated war production areas, disrupting the normal law of supply and demand for housing facilities, affording the opportunity for charging unreasonable rentals therefor; that speed in the production of the sinews of war is of the essence of the war effort and that the interposition of restraining orders or injunctions issued by State and inferior Federal courts will hinder and handicap the war effort, the paramount necessity of the hour. These public interests should not be subordinated to the personal rights of any individual. It is not questioned that the rent levels adopted as a basis of regulation were, as a general rule, reasonable and fair, nor that Congress has power to regulate rents by appropriate laws. Dealing with realities, this bill seeks to tie up the carrying out of these regulations because in the view of complainant and the court below, he is not afforded all the guarantees and remedial procedures provided for peace time conditions. While, as a general rule, the guarantees of the Fifth Amendment obtain in war time, even the taking of private property for war purposes need not await the ascertainment and payment of just compensation. 67 C. J. 376. That the Federal Government has not and will not protect the property rights of the citizens when the Supreme Court of the United States has considered and pointed out defects in the law, if such there be, is an assumption not to be indulged by State Courts. That injunctive relief sought by the bill, sustained by the court below, may bring confusion and hindrance to the prosecution of the war is well illustrated by conflicting decisions just rendered. In a late decision by the District Court of the United States in Kansas, Leon Henderson, Administrator v. Kimmel, 47 F.Supp. 635, that court considered the Emergency Price Control Act at length, sustained its constitutionality, and held the Administrator entitled to an injunction against violations of the regulations, while the Circuit Court of Mobile, Alabama, sustained an injunction suit by the property owner to prevent the enforcement of such regulations.

This court has quite emphatically and fully dealt with the consideration which should guide the judicial discretion in entertaining bills for injunctive relief. Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 153, 77 So. 574.

The decree of the court below is reversed and a decree here rendered dismissing the bill.

Reversed and rendered.

All Justices concur.