14 So.2d 519
**BROCK et al. v. CITY OF ANNISTON et al.**
7 Div. 743.

Supreme Court of Alabama.
May 13, 1943.

Rehearing Denied June 30, 1943.

Horace C. Wilkinson, of Birmingham, and C. H. Young, of Anniston, for appellants.

Merrill, Woolf & Merrill, of Anniston, and Wm. N. McQueen, Acting Atty. Gen., for appellees.

GARDNER, Chief Justice.

Complainants are the owners of residential property abutting on Quintard Avenue in the City of Anniston, and filed this bill seeking injunctive relief against the City of Anniston, the Highway Director of the State of Alabama, and the R. T. Smith Construction Company, against the widening of the paved portion of said avenue between Eighteenth and Twenty-second Streets. The equity of the bill rests upon the theory that the abutting property of these complainants will be damaged by the contemplated improvements, in the destruction of many valuable shade trees, flowers, grass and shrubbery, between the curb and the property line on both sides of Quintard Avenue between said streets, as well as a change in the curbing, gutter, and sidewalks, as a part of said improvement. The equity of the bill was not challenged, and is well sustained by our authorities. City Council of Montgomery v. Maddox, 89 Ala. 181, 7 So. 433; McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153; City Council of Montgomery v. Townsend, 80 Ala. 489, 2 So. 155, 60 Am.Rep. 112; Southern Bell Tel. & Tel. Co. v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am.St.Rep. 930; Finnell v. Pitts, 222 Ala. 290, 132 So. 2; McGowin v. City of Mobile, 241 Ala. 576, 4 So.2d 161, and authorities therein cited.

The contemplated improvement touches none of the property here involved. Quintard Avenue was originally opened up for a width of eighty feet more than twenty years ago and dedicated to the public use with only a paved way of thirty-two feet. The proposed project does not widen the street, but only the paved way, so that the paved portion of the street will extend through these blocks a width of sixty feet. This necessitates not only the removal of some of the trees growing in the parkway between the curb and the sidewalk, but also the disturbance of some of the curb, and for a short distance, the removal of the sidewalk. We think it clear enough, and requires no discussion to disclose, this contemplated improvement is not a taking of any of the property of the complainants within the meaning of Section 235 of the

Constitution of 1901, but that the damages suffered are consequential in character, though equally protected by this constitutional provision. William N. Hunter and T. S. Hunter v. City of Mobile, ante, p. 318, 13 So.2d 656; City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395; Southern Bell Tel. & Tel. Co. v. Francis, supra.

Upon presentation to the chancellor, and without notice, temporary injunction was issued as prayed. But upon hearing of the motion to dissolve and a consideration of the answer of the defendants and oral proof, the chancellor granted the motion and dissolved the injunction. From this decree, the complainants prosecute this appeal.

The answer denied emphatically that the City of Anniston is engaged in making this improvement, and sets out in more or less detail the facts which brought it about. Concerning these facts, there is little, if any, dispute. On the outskirts of the City of Anniston is located what is known as Fort McClellan, which is owned in fee by the Federal Government (Pound v. Gaulding, 237 Ala. 387, 187 So. 468), and where many thousand soldiers are being trained, and where, on account of wartime conditions, the volume of traffic flowing between and through the City of Anniston and Fort McClellan has greatly increased, with only one public highway connecting the fort with the city. Military authorities, therefore, are hampered and impeded in their military activities on account of this situation. Quintard Avenue beyond Twenty-second Street has not heretofore been opened for traffic, but was what is known as a dead-end street. This improvement contemplates the opening and extension of Quintard Avenue beyond Twenty-second Street on to Fort McClellan. The purpose of this project is to relieve the congested condition as above indicated.

In view of the existing emergency, Congress passed what is known as the Defense Highway Act of 1941, Title 23 U.S.C.A. § 101–117. In Section 106 is to be found detailed provisions for the construction, maintenance, and improvement of "access roads," and for replacing existing highways and highway connections, to military and naval reservations, defense industries and defense sites, and to sources of raw material, when such roads are certified to the Federal Works Administrator by the Secretary of War or Navy as important to the national defense. Many millions of dollars are appropriated for this particular purpose, and the Commissioner of Public Roads is authorized to enter into contracts for the building and maintenance of these access roads.

■■ In passing we note the insistence of counsel for complainants that Fort McClellan does not come within the definition of "military reservation," citing 50 C.J. 956; 40 C.J. 568. But the act of congress upon which the above cited authorities are based is entirely different from the act here in question. The meaning of words are, of course, to be taken from their context. The United States Supreme Court in Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, makes use of the expression "military reservation" which indicates clearly that such term is equally applicable to Fort McClellan. It would be wholly unreasonable to assume that in Section 106 Congress has made the specific provision for access roads to defense industries and sites and sources of raw material and yet intended to make no provision for a road to Fort McClellan and like military centers where thousands of soldiers are being trained daily for military service. We conclude this insistence requires no further discussion, and are clear to the view the Defense Highway Act gives full authority for the construction and maintenance of access roads to Fort McClellan. In Section 109 of this act the U. S. Commissioner of Public Roads is authorized to make surveys and plans and to make use of the state highway department of any state in making such surveys and plans, and express reference is made in this section to "highways" and "bypasses" around, and extensions into and through, municipalities and metropolitan areas. Like use is authorized to be made of the state highway department in obtaining rights of way for such project, as is to be noted in Section 114. We note also the provision in Section 109, as follows: "By agreement with the State highway department of any State, any project carried out in such State under the provision of this section may be carried out through or in cooperation with the highway department of such State."

■ The answer discloses, and this is fully sustained by the proof, that this contemplated widening and improvement of Quintard Avenue (all disturbed curbing and sidewalk are, of course, to be replaced)

is being done by the Federal Government and paid for entirely with Federal funds. There has been due certification of the necessity of this road·as an access road to Fort McClellan, and it appears undisputably that the improvement was not instigated by the City of Anniston and that the City of Anniston has no part in the project. By formal ordinance the Federal Government was given access to Quintard Avenue for the purpose of this project at the request of the military authorities of the Government. True, in the ordinance the city approved the plans for the project and agreed to hold the State, its officers, agents and employees harmless against all manner of suits, claims, actions, and causes in equity whatsoever that may arise or be alleged to have arisen as a result of the grading, draining, paving, and otherwise improving said project. But, as above indicated, undisputably the city has no part in the project, and apparently no interest therein other than its cooperation with the military authorities as herein disclosed. Clearly, such an indemnity provision incorporated in the ordinance will not of itself suffice to convert a definite Federal Government improvement into one by the municipality.

As is, of course, well understood (William N. Hunter and T. S. Hunter v. City of Mobile, supra), Section 235 of our Constitution has no reference to the State (Finnell v. Pitts, supra), nor, of course, to the Federal Government. As to the State, the restrictions of Section 23 of the Constitution have reference to the taking of property and not to consequential damages; likewise as to the Federal Government under the Fifth Amendment to the Constitution of the United States.

As has been often observed, the power of eminent domain is one of the highest powers of government, an attribute of sovereignty, inherent therein as a necessary and inseparable part thereof. It is a right which antedates constitutions, inherent in society and superior to all property rights. It is a right restricted as above indicated by the Federal and State Constitutions; and for any consequential damages no liability attaches either to the Federal or State Governments. 29 C.J. p. 919. This was the rule applicable also to municipal corporations until the amendment to the Constitution of 1875. City Council of Montgomery v. Townsend, supra. Our cases disclose that this resulted in much in-

justice, and the constitutional provision as now exists was the result of a firm conviction that the property owner should have redress for damages suffered to his property by the exercise of eminent domain or for the improvement of highways and the like, though there was no actual taking. These are matters, however, which address themselves to the lawmaking powers and not to the courts.

If there was any clear indication that the City of Anniston was in any manner involved in this improvement, and that the adopted method was but a subterfuge to evade constitutional liability, we would not hesitate to so declare. But we cannot read this record to that end. We think it clear enough that the Federal Government, in this time of emergency, possessed the power to widen this pavement in order to create this access road to Fort McClellan, and that the municipality would have been helpless to prevent it.

As said by this Court in the recent case of Kittrell v. Hatter, 243 Ala. 472, 10 So. 2d 827, 830: "This is war time. We are dealing with war measures. The power of the Nation to conduct war and the power to make laws and regulations needful in the conduct of the war are fundamental. They are granted to the Federal Government by the * * * Constitution." We there quoted approvingly from United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302, as follows: "From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law."

Congress has seen fit to make very definite provision for access roads to reservations of this character. The duly constituted authorities have certified that its construction is necessary, and the proof shows a very harmful condition of traffic congestion. The evidence also indicates that the widening of this paved way and the extension of Quintard Avenue is the most, if not the only, feasible and reasonable plan for the construction of this access road and the relief of this traffic situation. And it further appears that everything that is being done is at the instigation of the Federal Government and under Federal authority. Answering complainants' further argument, it may be observed that this

access road is to a reservation, and that § 1348, Title 10 U.S.C.A., and § 933, Title 43 U.S.C.A., which have reference to granting permission for extension of state and county roads through and across military reservations, are without application here.

Counsel lays some stress upon the right of the State Highway Department to enter into the improvement of a city street unless within statutory provisions therefor. But as we view it, this is merely contract work being done under the supervision of the State Highway Director and his assistants in exact keeping with the Defense Highway Act, which makes specific provision for the use by the Federal Government of the agencies of the state looking to practical ends and more expeditious completion of the project. Federal funds are locally deposited to pay for every dollar of this improvement, and the Federal Government is merely using the agency of the State in carrying out the project, just as Congress contemplated in the passage of the Defense Highway Act.

■ Something is said in the argument, also, to the effect that the city is now estopped to permit a change in the street by reason of the establishment and improvement of Quintard Avenue some twenty years ago and the laying of the pavement at the expense of the property owner as it was laid, and the planting of trees and shrubbery in the parkway. But this argument not only runs counter to the well established rule of our cases, as illustrated by Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289, 21 L.R.A. 62, but is also unsupported by the facts as hereinabove disclosed. This is not a city project, but a Federal project, undertaken by the Federal Government pursuant to the act of Congress which was passed in full recognition of the emergency proclamation of the Chief Executive of the Nation. Proclamation of Sept. 8, 1939, No. 2352, Title 50 U.S.C.A. Appendix, note preceding section 1.

■ Nor can the fact that the abutting property owner owns a fee to the center of the street affect in any manner the situation or the legal principles applicable thereto in the instant case. The dedication of this ground for street purposes creates an easement extensive enough to permit the city to make any legitimate public use of it which does not impair the right of passage or the right of ingress and egress to and from the adjoining property. The mere existence of the naked fee in the adjoining owner to the center of the street can in no manner impede the assertion of the public right therein. Hobbs v. Long Distance Tel. & Tel. Co., 147 Ala. 393, 41 So. 1003, 7 L.R.A.,N.S., 87, 11 Ann.Cas. 461. But what is here more in point, and too clear for discussion, such ownership could in no manner stand in the way of the right of the Federal Government in the completion of this project as an access road to its military reservation in this time of emergency

In reply brief counsel for complainants strenuously reiterate the argument that this improvement is being done by the State without proper authority and with the acquiescence of the municipality for the purpose of escaping any liability on the part of the city under Section 235 of the Constitution. We have carefully reconsidered this question in the light of the earnest and able argument of counsel in brief. But as previously observed, we think this insistence is answered by paragraph 8 of defendants' answer, which is undisputed and is indeed supported by the proof, which fully discloses this is, as we have previously stated, a Federal project throughout, instigated by the Federal Government for a purpose which the military authorities deem necessary in time of war, and that all the city has done has been to pass the ordinance referred to at the request and insistence of the military authorities. The primary interest was that of the Federal Government in the establishment of the access road to one of its military reservations, and not that of the city. We are unable to see how in any manner this improvement could be termed a municipal project.

If complainants suffer loss as a consequence of this project, as their testimony tended to show, it is a matter much to be regretted, and presents very naturally a sympathetic appeal. But as we view it, the damages suffered are like those consequential damages referred to in our decisions which had to be borne by the property owner prior to the amendment of our Constitution in 1875, and described as "loss, not injury; inconvenience, not wrong,—to which every citizen must submit * * * for the public good." City Council of Montgomery v. Maddox, supra [89 Ala. 181, 7 So. 434]. If hardship results, recourse cannot be had to Section 235 of the Constitution

and injunctive relief as here sought. As we understand this case, the legal principles applicable are clear and our duty plain.

Under the undisputed facts, therefore, we conclude that the motion to dissolve the injunction was rightly sustained and that the decree accordingly should be here affirmed. It is so ordered.

Affirmed.

All the Justices concur.

On Rehearing.

GARDNER, Chief Justice.

We are persuaded from a re-examination of this case that what has been said in the original opinion suffices as expressive of our view of the applicable legal principles involved. But out of deference to the earnest and forceful argument of resourceful counsel, we have considered a brief response appropriate.

In what has already been said we rested content with the statement that the contemplated improvement was not a "taking" of complainants' property within the meaning of Section 235 of our Constitution, but that the damages were consequential in character, though equally protected by this constitutional provision. Among the authorities cited was that of Southern Bell Tel. Co. v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am.St.Rep. 930, which we thought here much in point. The Francis case has been subsequently cited with approval, and indeed, its soundness never questioned. Hobbs v. Long Distance Tel. & Tel. Co., 147 Ala. 393, 41 So. 1003, 7 L.R.A.,N.S., 87, 11 Ann.Cas. 461; McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153; City of Mobile v. McClure, 221 Ala. 51, 127 So. 832. It was referred to in Hobbs v. Long Distance Tel. & Tel. Co., supra, [147 Ala. 393, 41 So. 1005, 7 L.R.A.,N.S., 87, 11 Ann.Cas. 461], as follows:

"Our own court has expressed itself very strongly as to the absolute right of the state to control and use the public thoroughfares for all public purposes, and against the right to enjoin a public improvement authorized thereon. Perry v. N[ew] O[rleans,] M. & C. R. [Co.], 55 Ala. 413, 28 Am.Rep. 740; Western Ry. of Ala. v. A[labama] G. T. R. Co., 96 Ala. 272, 281, 11 So. 483, 17 L.R.A. 474.

"In a more recent case, it has declared the absolute right of a municipal corporation to authorize a telephone company, in stringing its wires, to cut trees on the sidewalk, without liability to the abutting owner. Southern Bell Tel. Co. v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am.St.Rep. 930."

The opinion in the Hobbs case quotes approvingly the New Jersey Court to the effect that the right of "an abutter on the highway who holds the fee therein is subordinate to that of the public and so insignificant when contrasted to that of the public that it has been declared to be practically without the least beneficial interest." And other authority is cited and quoted to demonstrate that "with respect to lands over which streets have been laid, the ownership, for all substantial purposes is in the public." Like thought was expressed by Mr. Justice Sayre in his dissenting opinion in McEachin v. City of Tuscaloosa, supra, with supporting authorities noted. And the majority opinion discloses concurrence in his views in this respect, the point of difference being in the failure of the dissenting opinion to give full effect to Section 235 of our Constitution. The majority opinion states: "We would make no war upon the opinion of Justice Sayre * * * if section 235 of the Constitution did not exist, as it is a clear enunciation of the rule under the common law." [164 Ala. 263, 51 So. 154.]

And the opinion of the Vermont Court in Skinner v. Buchanan, 101 Vt. 159, 142 A. 72, cited by complainants, clearly demonstrates that the matter of ownership of the fee to the center of the street is "comparatively unimportant" upon the question here considered. The reasoning of the Iowa Court in Liddick v. City of Council Bluffs, Iowa, 5 N.W.2d 361, 368, to which complainants direct our attention, appears to support a contrary view. But no necessity arises to look elsewhere for authority. Our own decisions have definitely settled the question that damages of the character here involved are consequential and that such an improvement does not constitute a "taking" of property as here argued.

But counsel lay much stress also upon the Liddick case in their further insistence that this is a city improvement and, therefore, within the influence of Section 235 of our Constitution. In the original opin-

ion, looking through form to substance as we should, we reached the definite conclusion that the City of Anniston had no part in this project and apparently no interest in it other than its cooperation with the military authorities under the direction of the Federal Government in the establishment of an access road to the military reservation at Fort McClellan. And, indeed, we stated that the City's acquiescence was in a matter which it was powerless to prevent, had the City authorities been so inclined. We feel constrained upon reconsideration of the question to adhere to that view. The Liddick case presented quite a different situation. We were careful to observe that if this record disclosed any clear indication that the City of Anniston was in any manner involved in this improvement and that it adopted this method as a subterfuge to evade constitutional liability, we would not hesitate to so declare, and a different result would doubtless follow. Such was the situation presented to the Iowa Court in the Liddick case. The opinion goes into much detail concerning the activity of the City and the construction of the viaduct there involved, which discloses that the City not only instigated the project, but actually participated therein throughout. The conclusion upon the facts by the Iowa Court may well be summarized in one sentence found in the opinion, as follows: "The record fully establishes that the city has been the chief and most persistent proponent of the viaduct project."

We have been cited also to Irwin Fishing & Hunting Club v. Cobb, 235 Ala. 394, 179 So. 183, and Sherlock v. Mobile County, 241 Ala. 247, 2 So.2d 405, which have been read with care. But we are unable to see that these authorities have application here, or in any manner militate against the conclusion reached.

But we consider further discussion unnecessary. We have carefully re-examined the questions here urged upon us, both in brief on application for rehearing and the supplemental brief in support thereof, and find ourselves unpersuaded that the original opinion was incorrect. The application for rehearing will accordingly be denied.

Application overruled.

All the Justices concur.