**STREET v. CLOE et al., City Com'rs.**
(6 Div. 615.)

(Supreme Court of Alabama. June 1, 1922.)

**1. Statutes ⬅⬡181(1)—Construed according to legislative intent.**

In construing a statute, the courts will give effect to the plain and validly expressed intention of the Legislature.

**2. Statutes ⬅⬡206—Entire statute considered in construction thereof.**

The whole statute under construction, as well as others, must sometimes be looked to to ascertain the true meaning and intent.

**3. Municipal corporations ⬅⬡126—Five Commissioners Act held to obliterate differences between offices of commissioners except president of commission.**

Under the Five Commissioners Act of 1915, providing for the government of city of 100,000 population by five commissioners, dividing the government into five departments, and providing for the election of "a president of said commission and four other commissioners," there was no such office as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915"; the distinction between the commissioners other than the president of the commission, under Acts 1911, p. 204, having been obliterated by such act of 1915, in view of sections 4, 5, 6, 11, 16.

Appeal from Circuit Court, Jefferson County; Dan. A. Greene, Judge.

Proceeding by Thomas E. Street contesting the election of W. B. Cloe, Wm. L. Harrison, Mrs. Mary Echols, and W. E. Dickson as Commissioners of the City of Birmingham. From an order dismissing his petition or statement of contest, plaintiff appeals. Affirmed.

Erle Pettus, of Birmingham, for appellant.

The voter may write the name of the office on his ballot in connection with the name of the person whom he desires to elect. 20 C. J. 145; 74 N. J. Law, 16, 64 South. 964; 87 Misc. Rep. 610, 150 N. Y. Supp. 43. The office for which contestant was a candidate was separate and distinct. Acts 1915, p. 791; 181 Ala. 646, 62 South. 31.

The fundamental rule of statutory construction is to give effect to the intention of the Legislature. 36 Cyc. 1106; 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20. Readoption of a statute after judicial construction enacts the construction as a part of the statute. 155 Ala. 436, 46 South. 866, 130 Am. St. Rep. 56. Statutes regulating the conduct of elections should be liberally construed. 20 C. J. 169.

W. J. Wynn, W. A. Jenkins, and F. D. McArthur, all of Birmingham, for appellees.

The grounds of contest in Code, 1907, § 455, constitute only grounds upon which a contest may be predicated. 97 Ala. 92, 13 South. 125; 204 Ala. 549, 87 South. 87; 202 Ala. 603, 81 South. 545; 47 South. 1036. There was no such separate office as that sought by contestant. Acts 1915, p. 789.

MILLER, J. This is an election contest instituted by Thomas E. Street against W. B. Cloe and others who were declared elected commissioners of the city of Birmingham at an election held on the 10th day of October, 1921, or at a run-off election held on October 17, 1921.

The commissioners to be elected at that time consisted of a president of the commission and four associate commissioners. The contestant avers that there was a separate office of one of the four associate commissioners of the city, known as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915." He (contestant) qualified as a candidate for this particular office of commissioner. No other candidate qualified for that office. His name was not printed on the official ballot as a candidate for that particular office; but his name was printed on the official ballot as a candidate for commissioner together with the names of all the candidates who qualified for any of the four offices of associate commissioners. He did not receive a majority of the votes cast for commissioner, nor a sufficient number of votes to be in the run-off election. However, the said name and particular office of commissioner to which he aspired was written on numbers of ballots, and he was in that way voted for as a candidate for the office of "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915." He not only received in this way a majority but all the votes cast in the election for this particular office. These ballots were ignored for this particular office of commissioner, but counted for him as associate commissioner.

The contestees filed motion to dismiss the petition or statement of contest; the motion was granted, the statement of contest was dismissed, and contestant was taxed with

---

⬅⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the court cost. This judgment of the court is assigned as error.

This election was held under General Acts 1915, p. 789. Section 4, p. 790, of the act provides:

"At any election held under the provisions of this act, at which commissioners are elected, the candidates receiving the highest number of votes for the respective offices for which they are candidates, shall be elected thereto, provided he receives a majority of all votes cast for such office."

There are many questions presented, discussed, and argued by counsel. The contestant was a candidate for a special office of commissioner. He claims he was duly elected; received not only a majority but all the votes cast in the election for that office. Was there such a special office of commissioner? If yea, then was he legally elected to it? These are the real questions in the case. If the first question is answered in the negative, then we will not reach the second one. If it is answered affirmatively, then we must answer the second question and other questions presented by the record.

On October 10, 1917, the second Monday, the election day, was there an office to be filled by election in the city of Birmingham, known as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915"?

A three-commissioner form of government for municipalities was enacted by the Legislature and approved on March 31, 1911 (Gen. Acts 1911, p. 204). By section 1 it was made to apply to cities which now have or may hereafter have a population of as much as 100,000, according to the last federal census, or any such census which may hereafter be taken. At that time and now only one city in Alabama had a population of 100,000 or more. So the act applied, when enacted and approved, to only one city—the city of Birmingham. It has been declared by this court not to be a local act. State ex rel. v. Joseph, 175 Ala. 579, 57 South. 942, Ann. Cas. 1914D, 248; State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 South. 31. Section 2 of the act provides that the mayor of the city shall become one of the commissioners, and be president of the board of commissioners, and his term of office was fixed at two years until the first Monday in November, 1913. The term of office of the two commissioners appointed by the Governor was three and four years, respectively, one ending the first Monday in November, 1914, and the other on the first Monday in November, 1915. Each commissioner was to hold office until his successor was elected and qualified, as the act afterwards provided. Section 6 of the act declares and grants the powers of the commissioners. It reads, in part:

"Provided, however, that the commissioner appointed to fill the office of commissioner the term of which expires on the first Monday of November, 1915, and hereafter elected to said office the term of which expires as aforesaid, shall during his term of office exercise at all times the duties required of the department of public justice."

Section 9 stipulates and requires the names of the candidates shall be placed alphabetically underneath the words: "For president of the board of commissioners;" "for commissioner for the term of —— years, as the case may be."

Thus it is made clear and certain under the Three Commissioners Act, Gen. Acts 1911, p. 204, there was such an office, known and designated by it, as a four-year term office, which term of office expired on the first Monday in November, 1915. The term of office of each commissioner was different; and the duties of this one, whose term was four years and ended in November, 1915, were judicial in their scope and nature. This office of this commissioner whose term ended in November, 1915, was by this court declared to be a municipal office and a judicial office. State ex rel. v. Lane, 181 Ala. 650, 62 South. 31. Hon. A. O. Lane was appointed by the Governor to this office. He was at the time judge of the circuit court of Jefferson county; he resigned as circuit judge to accept this appointment; and had been elected for a term as judge for six years, which ended in 1917. That case (181 Ala. 650, 62 South. 31) held Judge Lane could hold that office of commissioner as it was a judicial one; and section 150 of the Constitution of 1901 did not prohibit him from holding it during the term for which he was elected to the office of circuit judge (State ex rel. v. Lane, 181 Ala. 646, 62 South. 31).

The Legislature by an act approved September 25, 1915, in Gen. Acts 1915, p. 789, provided for the government of cities by five commissioners. It applied to cities which now or may hereafter have a population of 100,000 people or more according to the last or any subsequent federal census. Only one city in Alabama had that population, and that was the city of Birmingham. This city was then operating under the three commissioners act of 1911. This five commissioners act could not become operative until such cities (city of Birmingham) by an election adopted the provisions of the act. The act provided in section 2 that it be submitted in such cities by special election to the qualified voters to be held on the second Monday in October, 1915, whether or not such city shall be organized under and governed by the provisions of this act. This city at said election by a majority vote of the qualified voters voting at the special election in October, 1915, placed the organization and government of the city under this five commissioners act of 1915. The city of Birmingham was then under the three commissioners act; this the Legislature knew. Judge A. O. Lane, an

ex circuit judge whose term for which he was elected ended in 1917, was one of the three commissioners; and this court had declared he could hold this particular office; and was not prohibited from so doing by section 150 of the Constitution. These matters were known to and appear to have been in the mind and consideration of the lawmakers in framing this five commissioners act. They try to make the provisions of the new act of 1915 harmonize as to the terms of office of the officials of the act of 1911, who were holding office under it in 1915. The three commissioners under the 1911 act were to be three of the five commissioners under the 1915 act. It provided for the election of two additional commissioners; and provided that their terms of office would end on the first Monday in November, 1917. Sections 4 and 5 of the act. It provided the terms of office of the three commissioners under the act of 1911 would each end on the first Monday in November, 1917. Section 5, Act 1915. Thus on the first Monday in November, 1917, the term of office of each and all of the five commissioners would end at the same time. Under the act of 1911 (three commissioners act), the term of office of the commissioner ending on the first Monday in November, 1915, held by Judge Lane, would have to be filled by an election. So section 5 of the 1915 act provides:

"The successor to the commissioner of such cities, whose term of office expires on the first Monday in November, 1915, shall be elected at the general election to be held in such cities on the second Monday in October, 1915, and he shall serve for a period of two years from the first Monday in November, 1915," etc.

And section 6 of the act of 1915 provides:

"However, that the office of commissioner, the term of which under the provisions of this act expires on the first Monday in November, 1915, is and shall be a judicial office, and the *commissioner appointed thereto*, and *hereafter elected thereto*, is clothed with full and ample power to administer justice under the ordinances of said city only," etc. (Italics supplied.)

The commissioner "appointed thereto and hereafter elected thereto is clothed with full and ample power to administer justice." The Legislature evidently by this had in mind Judge Lane, who had been appointed to this office, and the decision of this court in that case of State ex rel. v. Lane, 181 Ala. 646, 62 South. 31, so if he was elected, he would not be incompetent to fill it until November, 1917, by section 150 of the Constitution.

Did the Legislature intend that there should be, after the first Monday in November, 1917, when the terms of each and all of the five commissioners ended, a separate and distinct office of commissioner in the city of Birmingham with judicial powers, known as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915"? Did it end on the first Monday in November, 1917, or does it still exist, separate and distinct from the other commissioners? Let the act of 1915 answer the question. Let us gather the intent and purpose of the lawmakers under the facts and circumstances surrounding them, as expressed in their words in the act itself, taken as a whole. In this way we can get their meaning, intent and purpose. We have seen they have made the term of office of the three commissioners under the act of 1911, and of the two extra commissioners under the act of 1915, all end at one time, on the first Monday in November, 1917. Section 5 of the act of 1915 provides:

"On the second Monday in October, 1917, and every four years thereafter, there shall be elected a president of said commission, and four other commissioners, who shall assume the duties of the office to which they are elected, on the first Monday in November, 1917, and their term of office shall continue for a period of four years, and until their successors are elected and qualified."

This provides for the election of a president of the commission, and four other commissioners; four commissioners with no difference among them. It does not provide for the election of a president, three commissioners, and one other commissioner with judicial jurisdiction and duties or one "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915." That distinction among the four offices of commissioner seems by the act to have been obliterated after the first Monday in November, 1917. No necessity then existed for the difference; more than six years from the election of the member as circuit judge, who held by appointment and then by election, that special office of commissioner, had passed in November, 1917.

The form of the official ballot directed by this statute of 1915, section 16, sheds light on the legislative intent. It provides the ballots "shall contain the names of all candidates placed in alphabetical order directly underneath the words, "For president of the commission," and, "For commissioner," as the case may be. Nothing in this indicates any difference between the offices, except president of the commission and the four commissioners. No intent is expressed to have one of the offices of the four commissioners designated and voted for on the ballot as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915." That part of section 11 of the act of 1915 applicable to the point in question reads:

"The powers and duties in such cities shall be distributed into and among five departments,

as follows: (1) Department of general administration, finances and accounts; which department shall be especially charged with the administration of all legal affairs of the city, the purchase of supplies, the collection of taxes, licenses and other sources of income, the expenditures of the city, the management of its sinking fund, and a general supervision over the public affairs of the city, and its finances, including the payment of interest on the public debt. (2) Department of public improvements; which department shall have special supervision of all public improvements in such city, including the improvement and maintenance of streets and sidewalks, the building of viaducts, the construction of sewers, and the erection of all public buildings. (3) The department of public property and public utilities; which department shall have supervision over the management and maintenance of all public buildings, parks, playgrounds and public utilities, either owned and operated by the city, or operated by private corporations under franchises or contracts with the city. (4) Department of public safety; which shall have supervision over the fire and police department, and all things connected therewith. (5) The department of public health and education, which shall have supervision over the public health and sanitation, and all matters pertaining thereto, and over the public schools, public library, and the administration of the educational system of the city. The powers and duties pertaining to each of said departments shall be fixed by the commission according to the general plan above outlined, and one member of said commission shall be assigned to the head of each of such departments, and shall supervise and control its operation subject to the authority of the commission, and shall exercise and perform the powers and duties prescribed by this act, and such additional duties as may be designated by the said commission, and the assignment may be changed at any time by a majority of said commission."

This section 11 of the act of 1915 declares "the powers and duties of such cities shall be distributed into and among five departments." This includes the "powers and all the duties of such cities." It clearly does not authorize that one commissioner—a special commissioner, elected specially by the qualified voters—shall have exclusive charge of certain judicial duties as is pointed out in the three commissioners act of 1911. The act of 1911 prescribed the judicial duties to a particular office of commissioner. The act of 1915 does not. It directs that the duties and powers of such city shall be distributed into and among five departments and one member of said commission shall be assigned to the head of each of such departments and shall supervise and control its operation. The assignment of a member to any one of the five different departments may be changed at any time by a majority of said commissioners under the statute. Section 11, p. 796, Gen. Acts 1915. The qualified voters at the polls by ballot elect a president and four commissioners. The five members

constituting the board of commissioners by majority vote assign each official to one of the five departments of the powers and duties of the city; and the board of commissioners by a majority vote may change this assignment of any member to any department at any time.

The Legislature definitely and plainly divided the powers and duties of the city into five departments, and directed that one of the five members be assigned to one of the five different departments. This assignment is to be made by the commissioners and not by the qualified voters by ballot at the polls. A majority of the commissioners may change at any time any assignment of any commissioner. If one member of the commission was elected to a special department, the judicial department, there could be no assignment by the commissioners of one member of the five to each of the five departments at their discretion; and there could be no change of any one of the five commissioners from one department to another by a majority of the commissioners at any time. One of the five would be fixed by election, and could not be assigned to any one of the five departments and could not be changed from one department to another by a majority of the commissioners. It was not the idea of the Legislature in the 1915 act that one of the offices of the four commissioners on the first Monday in November, 1917, would be a separate and distinct office from the others, and that a commissioner would have to be elected by the qualified voters in October, 1917, or in October, 1921, to this special office, as the contestant contends.

[1, 2] "In construing a statute, the courts will give effect to the plain and validly expressed intention of the Legislature." State ex rel. v. Lane, 181 Ala. 646, headnote 4, 62 South. 31. "The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent." City of Birmingham v. So. Ex. Co., 164 Ala. 538, 51 South. 162.

[3] When the entire five commissioners act of 1915 is considered and construed as a whole, and in connection with the three commissioners act of 1911, it was evidently the intent, design, and purpose of the Legislature to abolish, on or prior to the first Monday in November, 1917, the special office of commissioner known and designated as "commissioner to succeed the successor of the successor of the commissioner whose term expired on the first Monday in November, 1915."

The contestant, Thomas E. Street, claims by his petition or statement of contest to have been elected to that particular office of commissioner in the election in October, 1921; as there was no such special office of commissioner in the city of Birmingham at that time, he could not have been elected to it. So the trial court did not err in dismiss-

ing his petition or statement of contest and in taxing him with the cost of the cause.

Finding no error in the record, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.