MOORE, Chief Justice
(concurring in part and dissenting in part).
We have a duty to give a statute a construction “that will sustain its validity if reasonably possible.” Pruett v. Patton, 288 Ala. 710, 714, 265 So.2d 130, 133 (1972). In answering the second certified question from the United States Court of Appeals for the Eleventh Circuit, the majority interprets “political activity” as that term is used in § 17-17-5, Ala.Code 1975, as not being limited to electioneering activity. However, I believe that the only reasonable interpretation, as set out below, is that the term “political activity” as used in § 17-17-5, in keeping with its usage in the rest of the Code, refers only to electioneering activity. If a statute is reasonably subject to two different constructions *281 (which this one is not), we are duty-bound to select the one that will uphold its constitutionality. Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 10, 18 So.2d 810, 815 (1944). We cannot abandon this duty simply because the determination of this ultimate issue resides with the tribunal certifying the question.[16]
Because the majority does not conduct its analysis against the background of this governing principle, it provides an answer to the second certified question that we ourselves would likely not provide were the question of the constitutionality of the statute before us on appeal. I believe, therefore, that by failing to apply the rule of construction we ourselves would employ were the constitutional challenge before us, we have provided the Eleventh Circuit Court of Appeals an incomplete and misleading answer.
If the majority feels that it is bound to answer the second certified question without considering the principle that a statute is to be construed in favor of constitutionality where possible, I believe it would more adequately assist the Eleventh Circuit by declining to answer the certified questions.
I agree with the main opinion that the “or otherwise” phrase in § 17-17-5(b)(l), Ala.Code 1975, is limited to the use of mechanisms of the State to support political organizations. I therefore concur in the affirmative answer to the first certified question. However, I believe that “political activity” in the Election Code means “electioneering.” I would hold that words used in the Election Code refer to elections, whether for candidates, ballot measures, or political parties. I also believe that this reasonable interpretation of the term “political activity” should govern the answer we provide the Eleventh Circuit under our duty to construe a statute in favor of constitutionality where possible. Therefore, I dissent as to the negative answer to the second certified question.

I. Defining “Political Activity”

Section 17-17-5(b)(l), Ala.Code 1975, prohibits government-employee salary deductions for any payment of dues to “a membership organization which uses any portion of the dues for political activity.” The statute further provides:
“For purposes of this subsection only, political activity shall be limited to all of the following:
“a. Making contributions to or contracting with any entity which engages in any form of political communication, including communications which mention the name of a political candidate.
“b. Engaging in or paying for public opinion polling.
“c. Engaging in or paying for any form of political communication, including communications which mention the name of a political candidate.
“d. Engaging in or paying for any type of political advertising in any medium.
“e. Phone calling for any political purpose.
“f. Distributing political literature of any type.
*282 “g. Providing any type of in-kind help or support to or for a political candidate.”
(Emphasis added.)
The plaintiff groups argue that the statute defines “political activity” in seven sub-paragraphs and that those definitions are much broader than mere electioneering activity. For instance, they argue that “public opinion polling” in subparagraph b. has a much broader scope than polling that is only election-related and that “political communications” in subparagraph c. encompass more than candidate advocacy. Further, they argue that the failure of the statute to define the term “political” creates a fatal vagueness.
The statute, however, does not say that political activity is “defined, as all of the following.” Instead, it says that political activity “shall he limited to all of the following.” Because subsection (b)(1) does not define the scope of the term “political activity,” but instead limits it, the actual meaning of “political activity” (before being so limited) must be found elsewhere.

A. The Election Code Context

Although the word “political,” standing alone, refers to government in general,[17] in the context of the Election Code the word is limited to election-related matters. “[W]hat the Legislature intends by the use of a particular word or phrase is to be determined, not merely by the ordinary meaning of the word, but also by its context.” Brown v. Protective Life Ins. Co., 188 Ala. 166,175, 66 So. 47, 49 (1914). See also Brock v. City of Anniston, 244 Ala. 544, 549, 14 So.2d 519, 528 (1943) (noting that the meaning of the words in a statute are to be construed within the context of the statute). Thus, in construing the meaning of the term “political activity” in § 17-17-5, we reasonably look to the rest of the Election Code for guidance. See Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (noting that, in ascertaining legislative intent, “we must look to the entire Act instead of isolated phrases or clauses”). See also United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) (“We do not ... construe statutory phrases in isolation; we read statutes as a whole.”).
Section 17-1-4 of the Election Code states that “political activities” include “endorsing candidates and contributing to campaigns.” “[W]hen specific words follow general words” in a statute, “the general words are construed to embrace only objects similar to those objects enumerated by the specific words.” Ex parte Cobb, 703 So.2d 871, 875 (Ala.1996). This application mirrors the ejusdem generis principle, employed by the majority in analyzing the first certified question — that specific words limit the general terms that follow them. See id. (“This rule is equally applicable when specific words follow general words -”). Because the explanatory phrase “endorsing candidates and contributing to campaigns” restricts the class of objects that constitutes “political activities” in § 17-1-4, the same definition should carry over to § 17-17-5(b)(l). Thus, the seven descriptive subcategories of “political activity” in § 17-17-5(b)(l) would ordinarily be reasonably construed to refer only to election-related activities: “public opinion polling” in § 17-17-5(b)(l)b. would refer to election-related polling; “political communications” in § 17-17-5(b)(l)e. would refer to communications related to elections, whether concerning voting on candidates or ballot measures.
*283 However, the use of the connector “including” alters the analysis. As stated in § 17-1^4(a), no city, county, or state employee “shall be denied the right to participate in city, county, or state political activities to the same extent as any other citizen of the State of Alabama, including endorsing candidates and contributing to campaigns of his or her choosing.” (Emphasis added.) The specific terms that follow “including,” unlike the usual application of the ejusdem generis doctrine, do not necessarily restrict the class of objects embraced by the general term. Instead they typically illustrate or provide examples of the meaning of the general term. ‘“In construing a statute, the use of a form of the word “include” is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaus-tive list of examples, rather than a bounded set of applicable items.’ ” State ex rel. Riley v. Lorillard Tobacco Co., 1 So.3d 1, 12 (Ala.2008) (quoting In re Mark Anthony Constr., Inc., 886 F.2d 1101, 1106 (9th Cir.1989)). See also Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95,100, 62 S.Ct. 1, 86 L.Ed. 65 (1941) (noting that “the term ‘including’ is not one of all-embracing definition, but connotes simply an illustrative application of the general principle”); Stansell v. Revolutionary Armed Forces of Colombia, 704 F.3d 910, 915 (11th Cir.2013) (noting that the term “‘includes’ is merely illustrative”).
Nonetheless, without claiming that the election-related terms that describe “political activities” in § 17-1-4 are exhaustive of the meaning of that term, one must still admit their probative force in explaining that meaning. In Samantar v. Yousuf, 560 U.S. 305, 314,130 S.Ct. 2278, 2286,176 L.Ed.2d 1047 (2010), the Supreme Court construed the following definition: “A ‘foreign state’ ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state ....” 28 U.S.C. § 1603(a). Responding to the argument that the terms following “including” in the statute were not exhaustive of its meaning and could thus also include individual government officials, the Court agreed that “the use of the word ‘include’ can signal that the list that follows is meant to be illustrative rather than exhaustive.” 560 U.S. at 317, 130 S.Ct. at 2287.
“But even if the list in § 1603(a) is merely illustrative, it still suggests that ‘foreign state’ does not encompass officials, because the types of defendants listed are all entities. See Russell Motor Car Co. v. United States, 261 U.S. 514, 519, 58 Ct.Cl. 708, 43 S.Ct. 428, 67 L.Ed. 778 (1923) (‘[A] word may be known by the company it keeps’).”
560 U.S. at 317, 130 S.Ct. at 2287-88. Similarly, even if the description of the term “political activities” in § 17-1-4 as “endorsing candidates and contributing to campaigns” is merely illustrative, it still suggests that the term “political activities” does not encompass non-electioneering activity. The descriptive phrases following the word “including” in § 17-1-4 refer exclusively to electioneering activities. “ ‘But granting that the word “including” is a term of enlargement, it is clear that it only performs that office by introducing the specific elements constituting the enlargement.’ ” Application of Central Airlines, 199 Okla. 300, 303,185 P.2d 919, 923 (1947) (quoting Blanck v. Pioneer Mining Co., 93 Wash. 26, 30, 159 P. 1077, 1079 (1916)).
As a further example, the section of the Election Code immediately preceding § 17-17-5 is entitled “Improper use of official authority or position for political activities.” § 17-17-4, Ala.Code 1975 (emphasis added). This section punishes as a felon “[a]ny person who attempts to use *284 his or her official authority or position for the purpose of influencing the vote or political action of any person.” (Emphasis added.)

B. Noscitur a Sociis

Sections 17-1-4, 17-17-4, and 17-17-5(b)(1) are all included in Title 17, the Alabama Election Code. Because a word is known by the company it keeps, one would expect “political activity,” when included in the Election Code, to refer to elections. “This maxim of statutory construction, noscitur a sociis, has been embraced by this Court as an aid in construing ambiguous statutory language.” Ex parte Cobb, 703 So.2d at 876. See also Winner v. Marion Cnty. Comm’n, 415 So.2d 1061 (Ala.1982) (noting that general words are qualified “by associated words”); Nettles v. Lichtman, 228 Ala. 52, 56,152 So. 450, 454 (1934) (noting that noscitur a sociis is “broader in its scope than the kindred maxim, ejusdem generis”).
Section 17-1-4, which supplies a particular definition of “political activity,” is in Chapter 1 (“General Provisions”) of the Election Code. One would expect that general provisions apply to the Code in general. The opening section of the Election Code, apparently assuming sub silentio that the Code applies to statewide general elections, states that with certain exceptions: “All of the provisions of this title shall apply to all primary elections and all elections by counties or municipalities held in this state -” § 17-1-1, Ala.Code 1975. This first section makes clear, as one would expect, that the Election Code applies to elections. By the same logic, “political activity” in the Election Code is election-related or “electioneering” activity. The seven categories of “political activity” to which § 17-17-5(b)(l) limits its application are therefore all variants of election-related activity, thus eliminating the asserted vagueness and overbreadth problems. In further support of this interpretation, I note that the 28 definitions provided in § 17-1-2 all relate to elections. The absence of “political activity” from the definitions list in § 17-1-2, therefore, does not create a vagueness problem. “Political activity,” like the other definitions in the Code, is understood by the canon of nosci-tur a sociis as election-related. Further, § 17-17-5 falls within Chapter 17 of Title 17, entitled “Election Offenses.” Thus, the offenses and penalties listed therein are all election-related, including those related to government-employee payroll deductions. Where terms are “susceptible of multiple and wide-ranging meanings,” “those meanings are narrowed by the commonsense canon of noscitur a sociis.” United States v. Williams, 553 U.S. 285, 294, 128 S.Ct. 1830,170 L.Ed.2d 650 (2008).

C. In Pan Materia

Insofar as noscitur a sociis does not extend to a comparison of sections in different chapters of the same title, the principle of in pan materia applies: statutes on the same subject matter should be construed together so as to harmonize them. “Statutes are in pari materia — pertain to the same subject matter — when they ... have the same purpose or object.” 2B Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 51:3 (7th ed. 2012) (“Statutory Construction ”). Sections 17-1-4 and 17-17-5, both residing in the Election Code, have the common purpose of regulating elections and thus should be construed together. “[Statutes relating to the same subject matter must be read in pari materia, thus allowing for legal harmony where possible.” Ex parte State, 786 So.2d 1134, 1136 (Ala.2000). See also Locke v. Wheat, 350 So.2d 451, 453 (Ala.1977) (“As a general rule, such statutes [in pari materia ] should be construed together to ascertain *285 the meaning and intent of each.”). Because the plaintiff groups claim that the term “political activity” in § 17-17-5, standing alone, is ambiguous, the use of the term in that section should be harmonized with its use in other parts of the Election Code. “[C]ourts generally turn to an in pari materia analysis to resolve a statutory ambiguity and to ascertain legislative intent.” 2B Statutory Construction § 51:3.
In particular, “courts construe words or phrases from a prior act on the same subject in the same sense.” 2B Statutory Constmction § 51:2. Section 17-1-4, which provides a definition of “political activities,” was originally enacted in 1978, Kirby v. Mobile Cnty. Comm’n, 564 So.2d 447, 449 (Ala.Civ.App.1990), preceding the enactment in 2006 and the revision in 2010 of § 17-17-5 by approximately 30 years. Subsection 17 — 17—5(b)(1) should thus be read to provide the same meaning for “political activity” as the legislature has provided in § 17-1-4. “[T]he need for uniformity becomes more imperative where the same word or term is used in different statutory sections that are similar in purpose and content.... ” Commissioner of Internal Revenue v. Ridgeway’s Estate, 291 F.2d 257, 259 (3d Cir.1961). That § 17-17-5 does not specifically refer to § 17-1-4 is of no moment. “Statutes need not have been enacted simultaneously or refer to one another to be in pari mate-ria.” 2B Statutory Construction § 51:3.

D. The Larger Context

1. Statutes Outside the Election Code

Uses of the term “political activity” in other sections of the Code also reflect its limitation to electioneering activities. Article 4 in Chapter 12 of Title 36 is entitled “Use of State-Owned Property for Political Purposes.” The first section of Article 4 states:
“The object and purpose of this article is to place all candidates for any state office upon an equality by the prevention of the use of any state-owned property in the promotion or advancement of the candidacy of any individual to the nomination or election to any public office of the State of Alabama.”
§ 36-12-60, Ala.Code 1975. Thus, “political purposes,” potentially an even broader term than “political activity,” is described in § 36-12-60 as promoting or advancing a candidacy for elective office. Chapter 26 of Article 36 is entitled “State Personnel Department and Merit System.” Section 36-26-38 in this chapter, entitled “Political activities prohibited,” states:
“No employee in the classified service shall be a member of any national, state or local committee of a political party or an officer of a partisan political club or a candidate for nomination or election to any public office or shall take any part in the management or affairs of any political party or in any political campaign, except on his personal time and to exercise his right as a citizen privately to express his opinion and to cast his vote....”
This description of prohibited “political activities” includes solely election-related activity. Section 17-1-4 specifically references § 36-26-38, thus incorporating these requirements into a section of the Election Code. After referring to endorsing candidates and contributing to campaigns as permitted “political activities,” § 17 — 1— 4(a)(3) states: “Notwithstanding the foregoing, any person within the classified service shall comply with Section 36-26-38.”
The local laws in the Code similarly limit “political activity” to electioneering. See, e.g., § 45-11-231.11 (“Political activities”), which prohibits favoring or disfavoring employees of the Chilton County sheriff *286 based on their support or failure to support “any candidate for political office.” These non-Election Code provisions are consistent with the construction of the term “political activity” as election-related. “The court ... is entitled to look, in its effort to arrive at the intention of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements _” Abramson v. Hard, 229 Ala. 2, 7,155 So. 590, 594 (1934) (emphasis added). See also Lehman, Durr & Co. v. Robinson, 59 Ala. 219, 234 (1877) (“In construing a statute, regard must be had to the whole act; and, if need be, to other statutes passed on the same subject; for it frequently happens that the meaning of one clause is shown by another that is not stated in connection with it.” (emphasis added)).

2. Caselaw

In Marshall County Board of Education v. State Tenure Commission, 291 Ala. 281, 280 So.2d 130 (1973), this Court construed a statute that prohibited the transfer or discharge of tenured school teachers for “political or personal reasons.” The Court construed “political reasons” to be the equivalent of a transfer or discharge for “political activity” and stated:
“We think the political reasons the Legislature had in mind in the use of the words in these statutes were that no tenured teacher could be transferred or discharged on the ground that the teacher did not belong to the same political party that a majority of the board members belonged, or that the teacher had voted for a political opponent of the board, or that the teacher had or had not professed a political preference in any political race, or that the teacher had become a candidate for public office, or for any similar political activity we have not specifically mentioned. In short, the Board cannot indirectly punish a teacher for that teacher’s political activity or that teacher’s refraining from political activity.”
291 Ala. at 286, 280 So.2d at 133-34 (emphasis added). The Court’s understanding of “political activity” in Marshall County Board of Education parallels its use in the statutes of this State, namely that “political activity” means election-related activity-

II. The Duty to Construe a Statute in Favor of Constitutionality

In its opinion accompanying the certified questions, the Eleventh Circuit Court of Appeals stated: “If [the Act] is meant only to reach payroll deductions for organizations engaged in electioneering activities ..., then it presents no constitutional problems. A statute with a broader reach may implicate First Amendment concerns. ...” Alabama Educ. Ass’n v. State Superintendent of Educ., 665 F.3d 1234, 1238 (11th Cir.2011) (footnote omitted). Although we are answering questions only about the meaning of terms in § 17-17-5 and are not expressing an opinion on the constitutionality of that statute, our answer to the certified questions will undoubtedly affect the Eleventh Circuit’s view of the statute’s constitutionality. Our construction of the terms at issue, therefore, should be guided by the rule of statutory construction that we interpret a statute to sustain its constitutionality where possible. “Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction which would uphold it.” Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 10, 18 So.2d 810, 815 (1944). See also Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (“We must afford the Legislature the highest degree of defer *287 ence, and construe its acts as constitutional if their language so permits.”); American Booksellers v. Webb, 919 F.2d 1498, 1500 (11th Cir.1990) (“ ‘It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be “readily susceptible” to a narrowing construction that would make it constitutional, it will be upheld.’” (quoting Virginia v. American Booksellers Ass’n, 484 U.S. 388, 397,108 S.Ct. 636, 98 L.Ed.2d 782 (1988))).
Thus, if the language of the statute “so permits,” we should interpret the term “political activity” in § 17-17-5 to avoid First Amendment problems. Faced with “two possible interpretations,” we should choose the one that is consonant with the constitutionality of the statute, namely that the term “political activity” in § 17-17-5 refers only to electioneering activities. Choosing among two possible interpretations the one that renders the statute constitutional effectuates legislative intent, the goal of statutory construction.
“The legislative body is presumed to intend that legislative acts shall not violate the Constitution, and be utterly void. Any reasonable construction will be given to effectuate such intent. It is the duty of the courts to give the statute construction that will sustain its validity if reasonably possible.”
Pruett v. Patton, 288 Ala. 710, 714, 265 So.2d 130,133 (1972).

III. Conclusion

Employing standard canons of statutory construction, I conclude that the term “political activity” in § 17-17-5(b)(l) refers to election-related or electioneering activity. Even if the term “political activity” could possibly be construed as overbroad or vague, and thus potentially to infringe protected speech, the presumption of constitutionality attending legislative enactments requires this Court to choose, among two reasonable constructions, the one that would sustain the validity of the enactment. I would therefore answer “yes” to the second certified question: “Does the term ‘political activity’ refer only to electioneering activities?” Although I concur with the affirmative answer to the first certified question, I must, with respect, dissent from the negative answer to the second certified question.
BOLIN, J., concurs.

. The United States Court of Appeals for the Eleventh Circuit framed the second certified question as a constitutional issue, holding that the term "political activity” in § 17 — 17— 5(b)(1), Ala.Code 1975, "presents no constitutional problems” if limited to electoral activities in support of candidates, political parties, or ballot measures. Alabama Educ. Ass’n v. State Superintendent of Educ., 665 F.3d 1234, 1238 & n. 1 (11th Cir.2011) (citing Ysursa v. Pocatello Educ. Ass’n, 555 U.S. 353, 356, 129 S.Ct. 1093, 172 L.Ed.2d 770 (2009)).

. See Black’s Law Dictionary 1276 (9th ed. 2009) (defining "political” as "[plertaining to politics; of or relating to the conduct of government”).